Santiago **VELEZ**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–1642.

Court of Appeals of Alaska.

Oct. 7, 1988.

R. Scott Taylor and Susan Orlansky, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Santiago Velez was charged in separate counts of an indictment with one count of sexual assault in the first degree, AS 11.-41.410(a)(1), and one count of attempted sexual assault in the first degree, AS 11.-31.100(a) and AS 11.41.410(a)(1). Each count involved a different incident and a different victim. He unsuccessfully sought severance of the two counts for trial and was convicted on both counts. Alaska R.Crim.P. 8, 14. He appeals, arguing that the trial court erred in denying his motions for a continuance and a severance, and that the trial court abused its discretion in admitting, over his objection, evidence of prior uncharged sexual assaults.

Velez argues that we should apply our recent decision in *Johnson v. State*, 730 P.2d 175 (Alaska App.1986), in which we granted pretrial review of an order denying severance and reversed, concluding that automatic severance should be ordered in any case upon timely request by the defendant where counts are joined solely on the basis that they are of the same or similar character. *See also Stevens v. State*, 582 P.2d 621 (Alaska 1978). The state counters that *Johnson* was decided after Velez's trial and should not be given retroactive effect. *See Farleigh v. Anchorage*, 728 P.2d 637 (Alaska 1986) (discussing circumstances under which a judi-

cial decision should be given retroactive effect). The state argues that we should follow our prior decisions in which we have refused to find prejudicial error in denial of severance where evidence from each of the cases joined would have been cross-admissible. *See Montes v. State*, 669 P.2d 961, 966 (Alaska App.1983); *Nix v. State*, 653 P.2d 1093, 1095–96 & n. 3 (Alaska App.1982); *Davidson v. State*, 642 P.2d 1383, 1390 n. 8 (Alaska App.1982).

We conclude that the evidence regarding the two charges joined in this case was not cross-admissible. Velez therefore suffered prejudicial error without regard to the rule of *Johnson*. Accordingly, we reverse Velez's convictions and remand this case for a new trial.[1]

## FACTS

A number of women have reported that Velez assaulted them. Evidence of three incidents was presented at trial: a sexual assault on C.S. on October 24, 1985, an attempted sexual assault on G.J. on November 14, 1985, and a sexual assault on S.F. on November 23, 1985. The incidents with G.J. and S.F. were charged in the indictment, and the incident with C.S. was introduced in evidence as a prior bad act.

S.F. testified that she met Velez at a bar in Anchorage on November 19, 1985. During the evening she and Velez talked and danced. She mentioned that she had a car that needed painting, and Velez told her that he worked at a body shop and would be happy to give her an estimate on repairs if she would bring her car to the shop where he worked. Velez called S.F. a couple of nights later and asked her to go out with him. During this conversation, S.F. mentioned that one of her headlights was out, and Velez suggested that she bring her car to the shop the next day and he would fix it.

On November 23, S.F. took her car to the body shop where Velez worked, and Velez completed the repairs by late afternoon. Velez, S.F., and several other individuals

---

1. Our decision to reverse renders Velez's complaints about denial of a continuance moot. I will consider Velez's other arguments to the extent that they are likely to reoccur at retrial.

then remained in the waiting room of the auto shop drinking beer and smoking marijuana. After everyone had left except for S.F. and Velez, he pushed her down onto the couch and removed her pants and underpants. As she continued to struggle, Velez became more aggressive and forced S.F. to have intercourse with him. When he got up from the couch she attempted to get her clothing. He then wrestled her to the ground and assaulted her again. After this assault, Velez let S.F. leave. Later, after returning to her home, S.F. went to the hospital for an examination.

G.J. became acquainted with Velez at an Anchorage bar where she worked part-time as a nude dancer. Velez worked in an automobile body shop nearby and was a regular lunch-time customer at the bar. Velez visited G.J. and her boyfriend at G.J.'s trailer on several occasions and helped G.J.'s boyfriend work on his truck.

On November 14, 1985, G.J. went to the body shop where Velez worked to pick up a coat she had lent him while he was working on her boyfriend's truck. Velez drove G.J. home, stopping on the way to purchase blackberry brandy and beer. When they arrived at G.J.'s trailer, G.J. invited Velez to come in for a drink. After drinking the brandy and beer, Velez asked G.J. to perform a striptease dance for him. She refused to dance. Velez made several suggestive comments about wanting her body, referring to sexual intercourse. When she requested that he leave, he threw her down on the couch. Velez held her down with his knees and attempted to unbutton her shirt. G.J. screamed and told Velez to get out and leave her alone, but Velez struck her in the face and they continued to struggle. G.J. managed to get away and picked up the telephone, telling Velez she was going to call the police. After a few minutes, Velez left and, shortly thereafter, G.J. called the police.

Velez was charged with sexually assaulting S.F. and attempting to sexually assault G.J. These charges were joined for trial.

In addition, the jury heard from Velez's former girlfriend, C.S., who testified as a rebuttal witness. C.S. testified that she met Velez in September 1985, at her place of employment. She indicated that he was friendly and would often come into the liquor store where she worked. Initially, she refused his invitations to go out, but eventually she succumbed and went out with him. She said he was a perfect gentleman during their first few dates.

On October 24, 1985, approximately three weeks before the incident with G.J., Velez and C.S. spent the evening drinking with several other people at the body shop where Velez worked. Velez was drinking blackberry brandy and beer. Later that evening, Velez and C.S. drove to his apartment and he invited her in for a drink. According to C.S., when they were in his apartment Velez became aggressive and tried to kiss her. She told him that she did not want to have sex with him. They struggled, and C.S. began to cry. Velez pulled C.S. down on the floor and forced her to have sexual intercourse. C.S. initially obtained a restraining order against Velez, but allowed it to be dismissed. She testified that she did not follow through with the restraining order or file formal charges against Velez because she was afraid of him.

## DISCUSSION

Velez contends that the trial court erred in denying his motion for a severance. He argues that the testimony of G.J. would not otherwise have been admissible in a trial of S.F.'s charges. He further argues that C.S.'s testimony should not have been admitted in trials of either G.J.'s charges or S.F.'s charges. *See* A.R.E. 404(b),[2] 403.[3]

---

**2.** Alaska Evidence Rule 404(b) provides:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, op-

portunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** Alaska Evidence Rule 403 provides:

*Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.*

The appellate courts of Alaska have considered the admissibility, in sexual assault cases, of evidence that the accused sexually assaulted or attempted to sexually assault the victim or another person on other occasions in a number of cases. *See Burke v. State*, 624 P.2d 1240, 1246–51 (Alaska 1980); *Freeman v. State*, 486 P.2d 967, 977–78 (Alaska 1971); *Soper v. State*, 731 P.2d 587, 589–91 (Alaska App.1987); *Johnson v. State*, 730 P.2d 175 (Alaska App. 1986); *Johnson v. State*, 727 P.2d 1062 (Alaska App.1986); *Bolden v. State*, 720 P.2d 957, 960–61 (Alaska App.1986); *Pletnikoff v. State*, 719 P.2d 1039 (Alaska App. 1986); *Oswald v. State*, 715 P.2d 276 (Alaska App.1986); *Moor v. State*, 709 P.2d 498 (Alaska App.1985).

In *Lerchenstein v. State*, 697 P.2d 312 (Alaska App.1985), *aff'd*, 726 P.2d 546 (Alaska 1986), we applied a two-step analysis to determine whether prior bad acts evidence is admissible under Rule 404(b). First, the court must determine if the evidence sought to be admitted has relevance apart from showing the character of the defendant in order to show the defendant's propensity to commit the crime in question. When evidence is offered solely to show propensity, it is inadmissible.[4] If the court determines that the evidence has some relevance apart from propensity, then it must determine if the nonpropensity relevance outweighs the prejudicial impact of the evidence under Rule 403. Of course, if there is no genuine nonpropensity relevance, the balancing step is never reached. 697 P.2d at 315–16.[5]

▮ Alaska courts have frequently permitted the state to introduce evidence of other sexual assaults to show *modus operandi*, and thereby identify the defendant as the perpetrator of the offense when identity was a disputed issue. *See Coleman v. State*, 621 P.2d 869, 874–76 (Alaska 1980), *cert. denied*, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); *Stevens v. State*, 582 P.2d 621, 628–29 (Alaska 1978); *Nix v. State*, 653 P.2d 1093, 1096–1100 (Alaska

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

4. Precisely what this means, however, is open to some doubt. For present purposes, evidence is used to show propensity, and therefore violates Rule 404(b), whenever the jury is asked to infer from the fact that a defendant engaged in certain conduct in the past that the defendant had a disposition or propensity to engage in similar conduct on other occasions, and to further infer that the defendant acted in accordance with that disposition by engaging in the conduct which constitutes one or more of the elements of the crime in question. *See* 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5233–34 (1978 & Supp.1987) (hereinafter C. Wright & K. Graham).

5. Two observations are important. First, propensity evidence is not excluded because it has too little probative value, but because it has too much:

The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge.

1A J. Wigmore, *Evidence* § 58.2 (Tillers rev. ed. 1983) (citations omitted).

Second, in Alaska, the rule prohibiting prior bad acts evidence under Rule 404(b) is one of exclusion, not one of inclusion. *Oksoktaruk v. State*, 611 P.2d 521, 524–25 & n. 9 (Alaska 1980). A rule of inclusion allows use of prior bad acts for any purpose relevant to the prosecution's case except to show criminal propensity. In contrast, a rule of exclusion precludes use of prior bad acts evidence for any purpose except a limited number of generally recognized exceptions to the rule. Thus, prior bad acts evidence *is not* admissible just because it is offered to prove a fact material to the prosecution's case other than propensity. It must fall within one of the specifically recognized exceptions to the exclusionary rule. *Id.* at 524. *See also State v. Lerchenstein*, 726 P.2d 546, 551 n. 8 (Alaska 1986) (Rabinowitz, C.J., dissenting). The distinction between defining the rule as a rule of exclusion or one of inclusion is discussed in 22 C. Wright & K. Graham, *supra*, § 5239 at 428–35. Rule 404(b) is based upon a federal rule that is generally interpreted as one of inclusion rather than exclusion. *Moor v. State*, 709 P.2d 498, 505–06 n. 5. In Alaska, recognition of the exclusionary character of Rule 404(b) requires substantially curtailing the discretion that trial courts would otherwise have under Rule 403 in determining whether to admit other crimes evidence. *Id.* *But see Lerchenstein*, 726 P.2d at 550–51 (Rabinowitz, C.J., dissenting).

App.1982). Identity is not an issue in this case because G.J. and S.F. both knew Velez. Therefore, proof of *modus operandi* is irrelevant.

In *Burke*, 624 P.2d at 1249–50, the supreme court recognized evidence of a "lewd disposition," *i.e.*, propensity to engage in unlawful sexual activity, as a limited exception to Rule 404(b) akin to proof of motive. *See Patterson v. State*, 732 P.2d 1102, 1104 (Alaska App.1987). The lewd disposition exception was limited to those cases in which the prior sexual acts involved the same victim as part of an ongoing relationship consisting of several separate sexual acts, and in which evidence of the entire relationship was necessary in order to place the alleged incident in context and explain the victim's actions. *Burke*, 624 P.2d at 1249–50. The supreme court cautioned, however, that the prejudicial effect of such testimony is substantial, and before admitting it the trial court must carefully weigh the testimony's probative value against its prejudicial effect. *Id.* at 1250–51.

In *Soper*, 731 P.2d at 590–91, we extended this lewd disposition exception to include sexual assaults on members of an immediate family under circumstances that would not fall within a "motive" exception.[6] In *Bolden* and *Moor* we were asked to extend this exception to testimony regarding sexual conduct with persons other than the victim and members of her immediate family who, nevertheless, had substantial similarities to the victim, *e.g.*, similar ages or similar relationships to the accused. We declined to do so. *Bolden*, 720 P.2d at 960; *Moor*, 709 P.2d at 506. In *Bolden, Pletnikoff*, and *Moor* we also rejected the state's arguments that such evidence was admissible based on its relevance to show common scheme or plan, motive,[7] or to corroborate the prosecuting witness. *See, e.g., Pletnikoff*, 719 P.2d at 1042–44. I adhere to those rulings.

---

**6.** In context, motive can mean a sexual desire for the alleged victim of the offense. *Patterson*, 732 P.2d at 1104. If the state seeks to show an illicit sexual interest in women generally, however, the evidence ceases to show motive and simply shows criminal propensity. *Oswald*, 715 P.2d at 279. Evidence regarding a motive to have intercourse with one woman does not legitimately support an inference that the defendant was motivated to have intercourse with a second woman. *Pletnikoff*, 719 P.2d at 1043. Using past incidents to show a willingness to force or coerce another person to engage in sexual activity is proof of propensity, not motive or intent. *Id.*

The terms "motive" and "intent" are frequently used interchangeably to mean goal, object, or desired result. If the defendant concedes intercourse and claims consent, however, the goal of intercourse is not in dispute; the issues are whether the defendant recklessly disregarded the victim's lack of consent or used force or a threat of force to coerce her. The term "intent" is also sometimes used to generally describe the defendant's *mens rea*. I will discuss the interplay between the defendant's *mens rea* and the consent defense later.

Rule 404(b) also allows evidence of other acts to show absence of mistake or accident. Nevertheless, in the case of date rape it is misleading to speak of a consent defense as raising issues of accident or mistake. *Id.* at 1044 n. 4. In contrast, in cases of sexual contact, short of intercourse, with children by a parent or custodian, a true "mistake" or innocent motive defense may be interposed. *See Freeman*, 486 P.2d at 978–79. When the conceded contact is unequivocally sexual, no such defense is plausible, and use of such evidence to show intent violates the rule of evidence now codified in Alaska Evidence Rule 403. *Id.* at 979. *Cf. Moor*, 709 P.2d at 510 & n. 8 (because of the relationship between the defendant and the adolescent friend of his niece, it is not possible that he could have innocently, but inadvertently, digitally penetrated her vagina).

**7.** We have declined to permit admission of such evidence to show a "common plan." Plan is not an element of sexual assault. To be admissible, a "plan" would have to be relevant to an element of the offense or to a theory of the defense. In the context of a sexual assault, the term "plan" might be construed to include a situation in which the assailant had a pre-existing plan to meet women, seek sexual favors, and then sexually assault them if they refused. To admit evidence of other sexual assaults on this basis, however, undermines the policy of Rule 404(b) by permitting the use of evidence of propensity to prove conduct. We have adhered to the view that admissibility under the rule requires more than a showing that each incident is close in time, has common factors, and may be said to have been planned in the same way. To qualify under the common-plan exception to the rule, we have required that each of the incidents be constituent parts of some overall scheme. *See Bolden*, 720 P.2d at 961 n. 2; *Pletnikoff*, 719 P.2d at 1043–44 & n. 2; *Oswald*, 715 P.2d at 279–80 & n. 2; *Moor*, 709 P.2d at 506–07. In reaching these conclusions, we have relied on the analysis in 22 C. Wright & K. Graham, *supra* § 5244 at 359.

The state, in partial reliance on *Davis v. State*, 635 P.2d 481 (Alaska App.1981), asks that we recognize a general exception to Rule 404(b) to cover situations in which a defendant concedes genital intercourse, but claims that the alleged victim consented. Such an exception is particularly necessary, the state urges, in cases of date rape in which the victim's testimony is uncorroborated, and the defendant can show that the relationship with the victim was previously friendly and may even have involved prior corroborated or conceded instances of consensual sexual activity. When the incident occurs in privacy and the victim is coerced by the defendant's greater strength or unconsummated threats of violence, the jury may have no basis for determining which version of the incident is more worthy of belief. If the state is precluded from corroborating the victim's testimony by showing that the defendant consistently forces sexual demands on acquaintances, the state apparently concludes that many rapists will be acquitted and may even be encouraged to force their intentions on other social acquaintances in the future. Similar concerns led the supreme court to create an exception to Rule 404(b) for assaults on the same victim in *Burke*, which we extended to members of the immediate family in *Soper*.[8]

We addressed this issue in *Davis* and concluded in part that, because the defendant placed his intent in issue, the prosecution was justified in offering evidence of other sexual assaults to contradict the defendant's claim that his alleged victim consented. 635 P.2d at 485. *Davis*, however, is distinguishable on its facts from this case. Davis was charged with kidnapping as well as sexual assault. Davis and his companion came across the complaining witness, who was having difficulty with her car, and offered to give her a ride. Once inside the car, Davis made sexual overtures to the victim and ignored her resistance. *Id.* at 483. Ultimately, she was taken to an isolated spot and sexually assaulted. *Id.* at 484. In order to prove kidnapping under its theory of the case, the state was compelled to show that Davis restrained his victim, intending to sexually assault her. *Id.* at 483 n. 2. Evidence of other occasions in which Davis and the same companion offered women rides and Davis then sexually assaulted them provided some evidence that Davis formed an intent to sexually assault his victim prior to restraining her, satisfying part of the state's burden to prove kidnapping. In addition, it is possible that Davis and his companion had a pre-existing plan to pick up hitchhikers and other vulnerable young women and sexually assault them, which might qualify for admission as a common scheme or plan. *Compare Davis*, 635 P.2d at 485 n. 3 *with Bolden*, 720 P.2d at 961 n. 2 *and Oswald*, 715 P.2d at 279–80 & n. 2.

Nevertheless, to the extent that *Davis* stands for the proposition that evidence of all prior sexual assaults by a defendant on similarly situated victims becomes admissible any time the defendant concedes sexual intercourse and argues that the complaining witness consented, I believe *Davis* goes too far, and I would specifically disapprove that holding.

Sexual assault in the first degree, based on the theory that one adult coerced another adult into sexual intercourse, does not require any showing of sexual motive or interest beyond the act itself. *Moor*, 709

---

8. Courts in other jurisdictions are divided on this issue. A number of courts permit evidence of sexual assault on other women to rebut a consent defense in a specific case. *See State v. Huey*, 145 Ariz. 59, 699 P.2d 1290, 1292–93 (1985); *State v. Hampton*, 529 P.2d 127, 130 (Kan.1974), *overruled on related grounds in State v. Cantrell*, 673 P.2d 1147 (Kan.1983); *Williams v. State*, 95 Nev. 830, 603 P.2d 694, 696–97 (1979); *State v. Fears*, 690 Or.App. 606, 688 P.2d 88, 89–90 (1984); *State v. Willis*, 370 N.W.2d 193, 198 (S.D.1985). *See also People v. Salazar*, 144 Cal.App.3d 799, 193 Cal.Rptr. 1, 8 (1983); *People v. Jackson*, 110 Cal.App.3d 560, 167 Cal.Rptr. 915, 918 (1980). *But see People v. Tassell*, 36 Cal.3d 77, 201 Cal.Rptr. 567, 679 P.2d 1 (1984).

A number of courts reject similar evidence when offered to rebut a defense based on consent. *People v. Key*, 153 Cal.App.3d 888, 203 Cal.Rptr. 144, 147–50 (1984) (criticizing *Salazar* and *Jackson; State v. Saltarelli*, 98 Wash.2d 358, 655 P.2d 697, 699–701 (1982); Annotation, *Admissibility, in Rape Case, of Evidence that Accused Raped or Attempted to Rape Person Other Than Prosecutrix*, 2 A.L.R. 4th 330 (1980 and Supp.1987).

P.2d at 510 n. 8. "In order to prove a violation of AS 11.41.410(a)(1) [sexual assault in the first degree], the state must prove that the defendant knowingly engaged in sexual intercourse and recklessly disregarded his victim's lack of consent." *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App.1983). In order to determine precisely what is at issue when it is contended that sexual intercourse took place "without consent," we should look to the defining statute, AS 11.41.470, which provides in pertinent part:

> *Definitions.* For purposes of sections AS 11.41.410–11.41.470 [sexual offenses], unless the context requires otherwise,
>
> . . . .
>
> (3) "without consent" means that a person
>
> (A) with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone; or
>
> (B) is incapacitated as a result of an act by the defendant.

Alaska Statute 11.81.900(b) defines "force" and "physical injury" as follows:

> (22) "Force" means any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement; "force" includes deadly and nondeadly force. . . .
>
> . . . .
>
> (40) "Physical injury" means a physical pain or an impairment of physical condition. . . .

The code does not further define "coerced," and we must therefore look to general usage for its meaning. AS 01.10.-040. "Coerce" means "to compel by threats or force," *Oxford American Dictionary* 120 (1980), and "compel" means "to use force or influence to cause (a person) to do something, to allow no choice of action. . . . A person compelled to do something is forced to act against his or her will." *Id.* at 128.

Whenever consent is the sole issue, an act of sexual intercourse or penetration is presumed and three related questions are presented. First, what was the attitude or motivation of the complaining witness regarding the act of intercourse and, more particularly, was the alleged victim induced to assent by fear of one of the specific results set out in the statute, *i.e.*, fear of violence, kidnapping, or injury to property? Second, what conduct did the defendant engage in to coerce the alleged victim? Third, did the defendant consciously disregard a substantial risk that the alleged victim failed to consent? *Reynolds*, 664 P.2d at 625.

When we examine these three issues, it is clear that the defendant's prior conduct is irrelevant to the first issue. It is relevant to the second issue to the limited extent that the state can prove that the defendant has a disposition or propensity to engage in forcible sexual relations and acted in accordance with that disposition or propensity by assaulting the complaining witness. The defendant's prior conduct is only marginally relevant to the third issue.

■ As to the first issue, the defendant's past conduct is irrelevant to the victim's state of mind unless the victim is aware of it. In the present case, it is not alleged that G.J. was aware of Velez's actions with S.F., or S.F. aware of Velez's actions with G.J.[9] Because a person's state of mind cannot be affected by matters of which they are in ignorance, it necessarily follows that Velez's conduct with S.F. was not relevant to show G.J.'s state of mind, and vice versa.

■ The second issue turns on whether, and to what extent, Velez engaged in coercive behavior or engaged in conduct likely to induce fear in his victim if she denied his request for sexual intercourse. Velez's activities with other women were marginally relevant to show how he conducted himself with each of his victims, and to that extent

---

9. G.J. was apparently aware of Velez's actions with C.S., and S.F. was aware of Velez's actions with certain women in Illinois. This knowledge raises other issues which will be discussed later. It does not make G.J.'s experience cross-admissible with S.F.'s because they were in ignorance of each other's experiences.

corroborated their testimony about his conduct with them, but this is pure propensity evidence, absolutely forbidden by Evidence Rule 404(b). Thus, the state cannot offer evidence that Velez coerced S.F. to support an inference that he had a disposition to force his affections on unwilling women, and then infer from that disposition that he forced his affections on G.J. Despite its relevance, this evidence is absolutely precluded. *Lerchenstein,* 697 P.2d at 315–16.

The final issue concerns the defendant's *mens rea.* In context, this issue requires a determination of whether Velez's actions with G.J. were relevant to show that he was aware of the substantial risk that S.F. did not consent to sexual intercourse.[10] Arguably, Velez's past experiences with women who charged him with assault and battery and swore out restraining orders against him, particularly if the experiences were close in time to the charged offenses, might alert him to the risk that his dating behavior, if consistently and habitually pursued, might result in sexual intercourse with nonconsenting partners.[11] The evidence in this case might therefore minimal-

10. *Shane v. Rhines,* 672 P.2d 895, 899 n. 3 (Alaska 1983), and *Abruska v. State,* 705 P.2d 1261, 1263–65 (Alaska App.1985), seem to suggest that a person's past experience when arrested for driving while intoxicated might be relevant to show recklessness when the person became intoxicated and drove thereafter. *See also United States v. Fleming,* 739 F.2d 945, 949 (4th Cir. 1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985). Past experiences of being arrested while driving drunk may alert one to the risk that one presents to others when one is intoxicated and drives a car. At the least, it provides notice of the community's disapproval of drinking and driving. *See Rhodes v. State,* 717 P.2d 422, 428 (Alaska App.1986).

11. A drunk driver always presents the same risk to the community at large. The risk does not depend on any particular potential victim's actions or responses. In contrast, Velez presented a particular risk to certain of his acquaintances under certain circumstances. An arrest for drunk driving focuses the arrested driver's attention on specific prohibited behavior. In contrast, the relationship between a charge of sexual assault and specific prohibited behavior is more ambiguous. The probative value of the reaction of Velez's past social companions to his sexual overtures to show notice that his conduct created a substantial risk of coercing nonconsenting partners into sexual activity depends upon how similar his conduct with each woman was. The issue comes down to the probability that Velez could on several occasions be involved in conduct which his partners viewed as rape without his becoming aware of its true nature. *See* 22 C. Wright & K. Graham, *supra* § 5245.

Wright and Graham appear to be correct when they point out that use of prior crimes to show knowledge or recklessness is somewhat cynical where no one would lack the knowledge in question. *See id.* § 5245 n. 15 at 497–98 (Supp.1987). In order to find that Velez's experiences with one woman should have alerted him to the risk of nonconsensual intercourse with another woman, the jury would have to find that Velez's actions toward each woman was essentially the same. Each woman, how-

ever, testified to a violent assault. Virtually, anyone should realize that such conduct would create a substantial risk that the resulting intercourse was coerced. If a jury believed each complaining witness' testimony that she was violently attacked, it is unlikely that it would, nevertheless, conclude that Velez did not realize the risk that his victims were not consenting to subsequent sexual relations. Thus, the real use of the evidence is to establish the coercive conduct, not the accompanying *mens rea.* Under such circumstances, to argue that the evidence should be admissible (to show *mens rea*) ignores the prohibition on character evidence to prove conduct contained in Alaska Evidence Rule 404(b).

Contrast the incidents in this case in which each alleged victim testified to overt coercive behavior punctuated with violence with a case in which each alleged victim denied that her assailant had overtly assaulted or threatened her. If a number of women, nevertheless, testified to common circumstances existing when they were alone with a common assailant which were innocuous viewed in isolation, but when considered together created an ominous atmosphere effectively terrorizing them into involuntary sexual activity, the evidence might have probative value outweighing its prejudicial effect. Any one victim's testimony might be dismissed by the jury as the product of an overactive morbid imagination. Viewed as a whole, however, the jury might infer that the defendant had successfully developed a procedure for communicating menace without overt violence. Such an inference would be highly probative of an otherwise ambiguous or even innocent appearing state of mind. The prejudice in such a hypothetical would be low because none of the victims would be testifying to any particularly outrageous behavior. It is only when all of the testimony is viewed in context that inferences adverse to the defendant will be drawn. This hypothetical may also serve to illustrate Wigmore's doctrine of "chance" discussed in n. 13, *infra.* The fact that any one or even two of the alleged victims was terrified by the circumstances might well be dismissed as a mistake on her part, but when three or more witnesses testify

ly satisfy the first prong of the *Lerchenstein* test and take the case out of Evidence Rule 404(b).

I believe, however, that the probative value of this evidence to establish *mens rea* is more than outweighed by the potential for prejudice. A jury faced with multiple accusers may not be convinced that any one accuser is accurately describing his or her past experience, but may, nevertheless, weigh the numerous accusers' testimonies and conclude that the defendant deserves punishment. Consequently, the evidence cannot survive the balancing test required under Alaska Evidence Rule 403. In any event, S.F.'s reactions to Velez could not have put him on notice of G.J.'s lack of consent, because Velez encountered S.F. on November 23, although he allegedly assaulted G.J. nine days earlier on November 14, 1986.

In order to justify denial of severance, S.F.'s and G.J.'s experiences with Velez must be cross-admissible. Because the foregoing analysis establishes that G.J.'s experiences were not admissible to prove S.F.'s complaints, severance was incorrectly denied even if S.F.'s experience was admissible to prove G.J.'s accusation. In reaching this conclusion, I recognize that Velez was charged with attempted sexual assault of G.J., not with sexual assault. The state was therefore under an obligation to prove Velez's specific intent, *i.e.*, that his motive or goal with regard to his restraint of G.J. was to sexually assault her.

Arguably, under *Davis*, Velez's experiences with other women might have been relevant to prove intent if there was any doubt regarding his intentions. When the evidence establishes an assault and battery, but the assailant's motive is unclear, evidence of prior acts may be relevant to show the assailant's intentions regarding the assault on the occasion in question. G.J.'s testimony, however, was unequivocal regarding whether Velez's motivations were sexual. She testified that he asked her to do a striptease for him, that he put his arm around her, and that he told her that he had not had a woman in a while and wanted someone to hold him. Velez told her, "Come on, I want it and you want it too." He pushed her down on the couch, laid on top of her, and attempted to separate her legs with his knees. Under the circumstances, if G.J. was telling the truth, Velez's intentions were blatantly sexual, and it was unnecessary to offer other evidence to clarify his intentions when he grabbed her.[12] To use the other evidence

---

that they were terrified by the defendant, it becomes more likely that there was some objective basis for their fear.

**12.** In *Moor,* we addressed the state's need for other-crimes evidence and said:

In evaluating the probative value of the evidence, [in order to balance probative value against prejudicial effect under Evidence Rule 403] the court must consider whether or not there was sufficient other evidence introduced for the same purpose. If sufficient other evidence has been introduced, the evidence of other crimes must be excluded so that "[t]enuous or marginal probative value of prior crimes evidence [will] never be allowed to serve as an excuse for implanting prejudice in the minds of the jury."

We do not suggest that, in order to be admissible, other crimes evidence must be strictly necessary to the prosecution's case in the sense that failure to admit the evidence would leave the case subject to a motion for directed judgment of acquittal.... We do stress, however, that the issue upon which the evidence is offered must be truly disputed in the case. Thus, where the prosecution wishes to use the evidence to rebut an anticipated defense, the trial court should seriously consider delaying the offer until the prosecution's rebuttal in order to ensure that the anticipated defense will in fact be raised.

709 P.2d at 506 (citations omitted).

The supreme court considered a related question in *Mullins v. State,* 608 P.2d 764 (Alaska 1980). Alaska Criminal Rule 45 excludes from computation of time before trial, the delay resulting from a continuance granted to the prosecution because of the "unavailability of evidence material to the state's case." The court construed "material" to mean "important or necessary to the prosecution's case," and not to be synonymous with "relevant." *Id.* at 767 (interpreting Evidence Rule 401). A similar analysis should lead us to conclude that evidence of a defendant's other bad acts should only be admitted when it is important or necessary to the prosecution's case. A.R.E. 403, 404(b). *See also State v. Lerchenstein,* 726 P.2d at 550 (Rabinowitz, C.J., dissenting) (in balancing prejudice against probative value, the prosecution's need for the evidence is an important consideration; if the government has a strong case on the

to corroborate her testimony that he violently assaulted her, is simply to rely on propensity evidence in violation of *Lerchenstein.*

One other issue may come up on retrial and should be addressed here. G.J. was permitted to testify that Velez told her about an incident involving his ex-girlfriend, C.S., in which Velez struck C.S. and forced himself upon her. She said he told her "he wanted her and he knew that she wanted him too." Velez allegedly told G.J. that his ex-girlfriend had accused him of rape and obtained a restraining order against him. These comments and Velez's aggressive behavior frightened G.J. This evidence was offered to explain G.J.'s motivation and fear of the defendant.

 Although resistance is no longer required to prove sexual assault, many jurors might disbelieve a nonresisting witness' testimony that sexual intercourse was nonconsensual. Thus, the evidence of Velez's statements to G.J. regarding C.S.'s experiences might be admissible to show that G.J. was frightened and would explain her lack of resistance and why she might engage in

sexual relations without consenting to them.[13] As we stressed in *Moor*, however, evidence of other crimes or other bad acts may only be admitted when it is necessary to prove the point in issue. 709 P.2d at 506. G.J. testified that she vigorously resisted Velez's assault, and the evidence is undisputed that she was successful in this regard and that he left without engaging in sexual intercourse. Because G.J. did resist and successfully prevented sexual intercourse, there was no justification for offering evidence that would have explained her lack of resistance had she not resisted. I assume that this evidence will not come in on retrial.

## CONCLUSION

It is relatively easy to demonstrate that use of other sexual assaults to rebut a consent defense cannot be reconciled with Alaska Evidence Rules 403 and 404(b). Those courts which admit such evidence in fact ignore the rule they purport to apply. To follow their lead does violence to the policy underlying the rules.[14]

disputed issue, the evidence of a prior bad act should be excluded more readily).

**13.** The trial court found the evidence admissible as an exception to Rule 404(b)—"proof of motive, intent, preparation, [or] plan." We addressed a similar holding in *Pletnikoff*, where we said:

> While there is some overlap in the permissible uses of other bad acts evidence, it is unlikely that evidence would ever be admissible in a given case for all the reasons mentioned in A.R.E. 404(b). *See Moor v. State*, 709 P.2d 498, 504–06 (Alaska App.1985). The trial court should therefore carefully evaluate the reasons offered for admissibility and, if it finds the evidence admissible, indicate the precise basis for its admission. A jury should not be told that certain evidence is admitted for all the purposes spelled out in A.R.E. 404(b), if most of those purposes are irrelevant to the case. *See* 22 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5240 at 479 (1978) (referring to a failure to differentiate between the various purposes permitted under Federal Rule of Evidence 404(b) as the " 'smorgasbord' approach to analysis of other crimes evidence").

*Pletnikoff*, 719 P.2d at 1042–43 n. 1.

**14.** In *State v. Willis*, 370 N.W.2d 193 (S.D.1985), the court justified admission of a prior sexual assault to rebut a consent defense and noted

that when the criminal act is admitted, and innocence is claimed on the basis of some mitigating or exculpatory factor, intent becomes a material issue. *Id.* at 198 n. 6 (citing 2 J. Wigmore, *Evidence* § 307 at 207 (3d ed. 1940)). Under this rationale, whenever a defendant relies upon justification as an affirmative defense, the defendant's prior criminal history comes into evidence. *See* AS 11.81.300–.450 (general principles of justification). Thus, if the accused admits striking the victim, but claims self-defense, any prior nonprovoked assaults would be admissible to refute the defense. *See People v. Simon*, 184 Cal.App.3d 125, 228 Cal.Rptr. 855, 862–64 (1986) (Weiner, J., concurring). Alaska law would appear to be to the contrary. *See Keith v. State*, 612 P.2d 977, 984–86 & nn. 23–27 (Alaska 1980); *Lerchenstein*, 697 P.2d at 314–19.

The dissent, and to a lesser degree the concurrence, is troubled by the doctrine of chance. *See* C. Wright & K. Graham, *supra* § 5242; II J. Wigmore, *Wigmore on Evidence* § 302 (Chadbourn Rev. ed. 1974). That doctrine would appear inapplicable to this case for a number of reasons. If the defendant concedes or does not dispute all relevant conduct, but argues that the conduct and the result to which it leads occurred by accident or chance, then a significant number of other instances of identical conduct leading to identical results occurring in close proximity is relevant to disprove accident or

On the other hand, the state makes a compelling argument that problems of proof in date rape cases, coupled with the probative value of evidence of similar instances to corroborate the victim's testimony, warrant a special exception to Rule 404(b) similar to the exception recognized in *Burke* and *Soper*. I recognize the force of this argument. Considering our supreme court's consistent policy of restricting the use of other-crimes evidence, *see, e.g., Oksoktaruk v. State,* 611 P.2d 521 (Alaska 1980), I believe that this argument must be made to the supreme court, for it is that court that should adopt any exceptions to the policy established in Rules 403 and 404(b).[15]

The judgment of the superior court is REVERSED and this case REMANDED for new trial.

COATS, Judge, concurring.

I join in the decision to reverse Velez's conviction. My reasons for doing so are somewhat different from Judge Singleton's. I will therefore briefly set out my separate view of this case.

In *Lerchenstein v. State,* 697 P.2d 312 (Alaska App.1985), *aff'd,* 726 P.2d 546 (Alaska 1986), we discussed the interplay between Alaska Evidence Rules 404(b) and 403. The trial court's inquiry, we determined, in cases dealing with evidence of prior bad acts is two-fold. "First, the court must determine that the evidence sought to be admitted has relevance apart from propensity. Second, the court must determine that the nonpropensity relevance outweighs the *presumed highly prejudicial impact of the evidence.* " 697 P.2d at 315–16.(emphasis added).

Whenever a defendant defends a sexual assault case on the ground that the alleged victim consented, the defendant's intent at the time the defendant engaged in the sexual act becomes an issue in the case. In order to convict the defendant, the jury must find not only that the victim did not consent, but also that the defendant recklessly disregarded the victim's lack of consent. Therefore, Velez's attack on S.F. was relevant to show his reckless disregard of whether G.J. consented. The case involving G.J., however, really appears to be a question of whether the jury believed Velez or G.J. If the jury believed G.J., there was no question that Velez attempted to sexually assault her. If the jury believed Velez, there was no question that he did not. It is not inconceivable, of course,

chance, if common sense indicates that so many instances could not have happened coincidentally. Wigmore uses the example of three shots fired in succession in the vicinity of an individual. The first two narrowly miss; the third strongly suggests an intent to injure. *Id.* § 302 at 241. The propensity rule is not violated by the use of the evidence because the relevant results and the conduct causing those results is conceded and only the advertence or inadvertence of the accompanying conduct is in issue. For this reason Wigmore was prepared to. permit evidence of similar contemporaneous events, even if the actor was anonymous. *Id.* § 303 at 247–48. When, however, the relevant conduct leading to the result in question is contested, there is a risk that the jury will use the evidence to infer propensity and infer that the defendant engaged in the prohibited conduct by committing the offense because the defendant engaged in similar conduct in the past. Such an inference is precluded by A.R.E. 404(b). In such cases, I believe that the prejudice flowing from admission of the evidence exceeds its probative value as a matter of law.

In a case of date rape when the defense is consent, part of the relevant conduct is an act of sexual intercourse which is normally conceded. As we have seen, however, although consent under Alaska law turns primarily on the respective states of mind of the alleged assailant and the alleged victim, it also includes consideration of the defendant's conduct as it might affect both parties' states of mind. In fact, in cases of alleged date rape the case will probably turn on whether the jury believes that the defendant engaged in coercive conduct because such conduct, if established, would readily permit the jury to infer that the alleged victim was, in fact, coerced and that the defendant knew or was aware of a substantial risk that the alleged victim was being coerced at the time intercourse occurred. In summary, when, as here, the only real issue is whether coercive conduct occurred, use of the law of chance to prove that such conduct occurred violates the "propensity rule." Rule 404(b).

**15.** There is a growing literature devoted to problems of proof in date rape cases. *See* Estrich, *Rape,* 95 Yale L.J. 1087 (1986); Note, *Culpable Mistake in Rape: Eliminating the Defense of Unreasonable Mistake of Fact as to Victim Consent,* 89 Dick.L.Rev. 473 (1985).

that the jury might try to reconcile the two stories. They might then conclude that G.J. did not consent, but that she did not adequately convey her lack of consent to Velez. This seems unlikely, however, based on the facts of the case. G.J.'s testimony was very strong concerning her resistance and her communication of that resistance to Velez.

Balanced against this relevance is the presumed highly prejudicial effect of evidence of prior crimes. Faced with the testimony of three alleged victims, each claiming that Velez raped them, a jury would certainly tend to conclude that Velez was guilty because he stood accused by three different people. This use of the evidence to show propensity, however, is forbidden under Rule 404(b). It appears to me, therefore, that the relevance of the evidence of the two other sexual assaults was clearly outweighed by the prejudicial impact of that evidence. Accordingly, I join in the decision to reverse.[1]

BRYNER, Chief Judge, dissenting.

I am unable to agree with the majority of the court in this case. The majority's decision peremptorily overrides a sound exercise of trial court discretion and unnecessarily bars the admission of highly relevant evidence of criminal intent in a case where the issue of intent has affirmatively been placed in dispute by the defendant.

The pivotal issue in this case is the admissibility of evidence of other misconduct in a sexual assault case when the defendant affirmatively claims consent.[1] Evidence of three sexual assaults was admitted against Velez. The first occurred on October 24, 1985, when Velez raped his girlfriend, C.S. The second occurred approximately three weeks later, on November 14, 1985, when Velez attempted to rape G.J., a woman he met at an Anchorage bar. Nine days later, on November 23, 1985, the third assault occurred when Velez forcibly raped S.F., another woman he met at a bar. Velez was charged with attempted sexual assault in the first degree for the November 14 attack on G.J. and with sexual assault in the first degree for the November 23 attack on S.F.

The evidence at trial as to the first charged assault indicated that G.J. worked part-time as a dancer at a topless bar in

---

1. I have little difficulty distinguishing *Davis v. State*, 635 P.2d 481 (Alaska App.1981). Davis was charged with the kidnap and rape of M.M. Davis and Smith gave M.M. a ride after her car had broken down. Davis and Smith then drove M.M. off to a secluded area where Davis raped her. At trial, Davis argued consent. Smith was permitted to testify that on two prior occasions he and Davis had given women rides and Davis had sexually attacked the women. The testimony was admissible to show Davis' intent when he picked up M.M. and to show why Smith acted as he did. *Id.* at 484. The testimony placed the incident with M.M. in a context. There was little danger that the jury would convict Davis because he was being charged in three separate incidents by three separate victims because the other victims never testified. The question in *Davis* came down to whether the jury believed Smith and M.M., or believed Davis. In *Davis,* the testimony concerning the prior incidents merely tended to flesh out Smith's version of the story.

1. Although the issue is couched in terms of improper joinder, *see Stevens v. State,* 582 P.2d 621 (Alaska 1978), and *Johnson v. State,* 730 P.2d 175 (Alaska App.1986), it is clear that Velez could have suffered no prejudice from misjoinder if evidence of the two assaults with which he was charged would have been cross-admissible in separate trials and, further, if evidence of his initial, uncharged assault would have been admissible in both cases. *See, e.g., State v. York,* 50 Wash.App. 446, 749 P.2d 683, 687–88 (1987). Our holding in *Johnson* is not to the contrary. *Johnson* upholds the right of automatic severance when cases are joined solely on the basis of the similarity of the offenses charged. Implicit in the rule of automatic severance adopted in *Johnson* is the recognition that admissibility of evidence of other misconduct will often depend on the specific context in which the evidence is offered at trial, and that it may therefore frequently be difficult to predict cross-admissibility with accuracy in advance of trial. Nothing in *Johnson* purports to establish a rule of *per se* reversal in the event of improper joinder or to alter the usual rules governing harmless error. When a trial court errs in denying automatic severance and it appears, following the trial, that evidence of each of the joint charges would properly have been admissible in a separate trial on the others, the error in failing to grant an automatic severance will be harmless unless the defendant establishes some other specific prejudice stemming from the misjoinder. Here, Velez has shown no specific prejudice apart from the possible lack of cross-admissibility.

Anchorage. Velez became acquainted with G.J. because he was a regular lunchtime customer at the bar where she danced. Velez visited G.J. and her boyfriend at G.J.'s trailer on several occasions and helped G.J.'s boyfriend work on his truck. On November 14, 1985, G.J. went to Velez's body shop to pick up a coat. Velez drove G.J. home, stopping on the way to purchase blackberry brandy and beer. When they arrived at G.J.'s trailer, she invited Velez in for a drink.

Velez told G.J. about an incident involving his former girlfriend in which he had hit her and forced himself upon her because "he wanted her and he knew that she wanted him." He told G.J. that his former girlfriend had accused him of rape and had obtained a restraining order against him.

After drinking the brandy and beer, Velez asked G.J. to dance for him. She refused. Velez got up and put his arms around G.J., saying that he had not been with a woman for a while. G.J. kissed Velez on the cheek and told him to calm down, reminding him that she had a boyfriend. Velez became more aggressive and held G.J. against himself. G.J. again told Velez to calm down or leave. She moved away from Velez and sat down on the couch. Velez approached G.J. again, saying, "come on, ... I want it and you want it too." G.J. started to get up, but Velez pushed her back down on the couch. He lay on top of G.J. and attempted to separate her legs with his knees, telling her, "come on, you know you want it." G.J. screamed and told Velez to get out. Velez struck her in the face, and they continued to struggle. Eventually, G.J. managed to get away for long enough to pick up the telephone. She threatened to call the police. Velez left the trailer.

G.J. reported the incident to the police. After an initial investigation, a misdemeanor citation was issued against Velez for assault and battery, and the case was apparently referred to the Anchorage Police Department for further investigation of more serious charges.

On November 19, 1985, Velez met S.F. at another Anchorage bar. Velez and S.F. talked and danced. Velez invited S.F. to bring her car to his body shop to get an estimate on some work S.F. needed to have done. On November 23, 1985, S.F. went to the body shop to have a headlight repaired. Velez was at the shop with several other people. While Velez was installing the headlight, he suggested that S.F. and the shop owner's girlfriend buy some blackberry brandy and beer. When they returned, everyone drank the brandy and beer and smoked marijuana. During this time, Velez mentioned to S.F. that he had charges pending against him in another state for assault and battery and that he had come to Alaska to get away from them.

After the others left the shop, S.F. asked Velez what she owed him for fixing her headlight. Velez replied, "A hug." S.F. gave Velez a hug and he pushed her down on the couch. S.F. said, "No," and began to struggle. Velez grabbed her by the throat and tried to remove her clothing. S.F. tried to knee Velez in the groin; he said menacingly, "Don't you ever do that again." After removing S.F.'s pants and underwear, Velez had sexual intercourse with her. He got up and placed a blanket on the floor, dragged S.F. off the couch, and had sexual intercourse with her again. Velez subsequently permitted S.F. to leave. S.F. reported the rape to the police later that evening.

Velez testified in his own behalf at trial. Concerning the November 14 attempted rape, he admitted hugging and kissing G.J. but claimed that she started screaming for no apparent reason, so he let go of her and she fell down. According to Velez, he left G.J.'s apartment soon thereafter when efforts to calm her down proved unavailing. Velez did not deny making the statements to G.J. concerning his assault on a former girlfriend. He testified, however, that he had not been charged with rape as a result of the incident and that his former girlfriend's efforts to obtain a restraining order had been dismissed because she failed to appear for a hearing. On cross-examination, Velez denied forcing his former girlfriend to have sexual intercourse with him.

Concerning the November 23 sexual assault on S.F., Velez admitted having sexual intercourse but claimed that the episode was entirely consensual.

On rebuttal, the trial court permitted the state to call Velez's former girlfriend, C.S., as a witness. C.S. testified that she met Velez in September 1985 and went out with him several times. On October 24, 1985, she and Velez spent the evening drinking with several other people at the body shop; Velez was drinking blackberry brandy and beer. Later that evening, Velez invited her to his apartment for a drink. According to C.S., Velez became aggressive and tried to kiss her. She told him that she did not want to have sex with him. They struggled and C.S. began to cry. Velez pulled her down on the floor and forced her to have sexual intercourse. C.S. subsequently attempted to obtain a restraining order, but she did not follow through or file formal charges of assault against Velez because she was afraid of him.

The jury convicted Velez of the attempted sexual assault on G.J. and of the sexual assault on S.F. He thereafter appealed. On appeal, Velez claims that, had separate trials been held on each of the two charges, evidence of his other two acts of sexual misconduct would have been inadmissible.

The proper starting point for analysis of Velez's claim is Alaska Rule of Evidence 404(b):

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident.

The plain language of Rule 404(b) bars the use of evidence of other misconduct only when it is admitted to prove the defendant's character, and only when the purpose of proving character is to establish the defendant's conduct in committing the offense charged. The rule does not operate to forbid evidence of other misconduct when it is relevant to show the defendant's culpable mental state—or *mens rea*—as opposed to the defendant's conduct—or *actus reus:*

Where the proof of other acts is offered to show that the person engaged in the disputed conduct, the weak probative value of the evidence of other crimes, wrongs, or acts is swamped by the countervailing considerations of fairness and efficiency. Therefore, the general rule is, as stated in Rule 404(b), that other acts may not be used to prove the conduct of the actor. But once it has been shown by other evidence that the act was done and the issue is who did the act and with what mental state, the balance shifts. The probative worth of the evidence when offered for some other purpose may be higher, the need to prove the requisite mental state may be greater, and the prejudice to the defendant may be less. Hence, the balance cannot automatically be struck against admissibility.

22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5239 at 438–39 (1978) (hereinafter Wright & Graham).

When evidence of other misconduct is shown to have relevance to some issue other than the defendant's propensity for conduct similar to the conduct charged, admission of the evidence "is left to the application of the normal rules of relevance...." *Id. See also Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Primary among the "normal rules of relevance," of course, is Alaska Rule of Evidence 403,[2] which permits the trial court, as a matter of discretion, to exclude relevant evidence when its probative value is outweighed by its potential for prejudicial impact. Wright & Graham, § 5239 at 439. *See also Ler-*

---

**2.** A.R.E. 403 provides:
*Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.*
Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*chenstein v. State,* 697 P.2d 312, 315–16 (Alaska App.1985), *aff'd,* 726 P.2d 546 (Alaska 1986).

The issue of admissibility in the present case thus turns initially on the question whether, in relation to each of the two charges against Velez, the evidence of his other misconduct was relevant to prove something besides his propensity to commit the type of conduct charged. If some other legitimate relevance is established, A.R.E. 404(b) is inapplicable; the issue of admissibility shifts to the balancing formula articulated in A.R.E. 403.

One of the purposes for which evidence of other misconduct is expressly allowed under A.R.E. 404(b) is to show intent. "The theory upon which evidence of other crimes is admissible on [the issue of intent] under Rule 404(b) is that its use on the mental element of the offense does not require an inference as to the character of the accused or as to his conduct." Wright & Graham, § 5242 at 487–88. This exception to A.R.E. 404(b) is broadly recognized and as broadly applied. *See, e.g., Huddleston,* 108 S.Ct. 1496. Intent is one of the exceptions expressly listed in A.R.E. 404(b) and is thus clearly recognized under Alaska law, even though the rule has been characterized as one of exclusion rather than inclusion. *See Oksoktaruk v. State,* 611 P.2d 521, 524 (Alaska 1980).

Because the exception for intent might threaten to swallow the rule if too broadly applied, however, two limitations are commonly imposed. First, "[t]he issue of intent must be seriously disputed." Wright & Graham, § 5242 at 489. *See also Freeman v. State,* 486 P.2d 967, 977 (Alaska 1971). And, second, the evidence of other misconduct must be similar to the act of misconduct with which the accused is charged. Wright & Graham, § 5242 at 490–92; *Adkinson v. State,* 611 P.2d 528, 532 (Alaska 1980); *Oksoktaruk,* 611 P.2d at 524.

In the specific context of sexual assault cases where the defendant claims consent, there is abundant case law in other jurisdictions allowing the admission of evidence showing similar sexual acts in order to prove the defendant's intent. *See, e.g., Oglen v. State,* 440 So.2d 1172, 1176 (Ala. Cr.App.1983); *People v. Salazar,* 144 Cal. App.3d 799, 193 Cal.Rptr. 1, 7 (1983); *People v. Jackson,* 110 Cal.App.3d 560, 167 Cal.Rptr. 915, 918–19 (1980); *O'Neal v. State,* 170 Ga.App. 637, 318 S.E.2d 66, 67 (1984); *Baker v. State,* 449 N.E.2d 1085, 1088–89 (Ind.1983); *State v. Gonzales,* 217 Kan. 159, 535 P.2d 988, 989–90 (1975); *Williams v. State,* 95 Nev. 830, 603 P.2d 694, 697 (1979); *State v. Fears,* 69 Or.App. 606, 688 P.2d 88, 89–90 (1984); *State v. Willis,* 370 N.W.2d 193, 198 (S.D.1985); *Rodriguez v. State,* 646 S.W.2d 539, 542 (Tex.App.1982); *State v. York,* 50 Wash. App. 446, 749 P.2d 683, 688–90 (1987). *See generally,* Annotation, *Admissibility, in Rape Case, of Evidence that Accused Raped or Attempted to Rape Person Other than Prosecutrix,* 2 A.L.R. 4th 330, 345–49 (1980).

In Alaska, the issue is squarely controlled by *Davis v. State,* 635 P.2d 481 (Alaska App.1981), a case that is virtually indistinguishable from Velez's case. In *Davis,* we expressly approved the use of similar crimes evidence to prove the intent of the defendant, who was charged with sexual assault and kidnapping, and who affirmatively asserted the defense of consent:

> In the present case, when Davis took the stand and testified that he had engaged in sexual intercourse with M.M., but that the intercourse was consensual, he affirmatively and specifically placed in issue his intent. Given this testimony, the highly probative nature of the evidence concerning recent similar assaults by Davis is manifest, and the trial court's decision allowing the evidence to be heard by the jury is not an abuse of discretion.

*Id.* at 485 (citations omitted).

The majority of the court in this case is unable to decide whether to distinguish *Davis* or overrule it, so they attempt to do a little of both. The attempt to distinguish *Davis* is wholly unconvincing. While it is true that Davis was charged with kidnapping, a specific intent crime, as well as with

sexual assault, the passage from *Davis* quoted above makes it clear that our holding addressed the relevance of Davis' prior misconduct on the issue of his intent in committing the sexual assault, not on the issue of his intent in committing the kidnapping. We found the evidence to be "highly probative" on the issue of intent, and we found its relevance for that purpose to be "manifest." *Id.*

Moreover, our holding in *Davis* addressed the admissibility of the challenged evidence on the issue of intent, not, as the majority of the court implies, on the issue of common scheme or plan. Indeed, if common scheme or plan had been at issue in *Davis*, it would have been wholly unnecessary for this court to rely on the fact that Davis had expressly raised the defense of consent and thereby placed his intent in issue, because the common scheme or plan exception to A.R.E. 404(b) allows the use of other crimes evidence to prove either conduct or intent. *See* Wright & Graham, § 5244 at 502 ("evidence of a plan may also be admissible to show the doing of the criminal act").

Judge Coats' concurrence suggests that it was necessary to explain Davis' intent toward his victim. Yet, the need to explain Davis' intent with respect to his victim was hardly greater than the need to explain Velez's intent with respect to G.J. and S.F. Other bases for distinguishing *Davis* suggested by Judge Coats are no more persuasive. To the extent that the actions of Smith, Davis' accomplice, needed explanation, that explanation could certainly have been provided without specific reference to the prior sexual assaults. As in *Davis*, the evidence of Velez's prior misconduct in this case placed his actions "in a context." Just as was the case in *Davis*, the issue of guilt here came down to a contest of credibility between the victims and the defense. And there is little reason to suspect that the evidence of prior sexual assault was any

less prejudicial in *Davis*—where it was presented through the testimony of an accomplice who was an eyewitness—than it was in the present case—where it was presented through the testimony of the victims themselves.

The reasons advanced in support of overruling *Davis* are equally unconvincing. In opposition to *Davis* and the numerous authorities from other jurisdictions reaching like conclusions on similar facts, Judge Singleton's opinion cites two decisions: *People v. Key*, 153 Cal.App.3d 888, 203 Cal.Rptr. 144, 147–50 (1984), and *State v. Saltarelli*, 98 Wash.2d 358, 655 P.2d 697, 699–701 (1982) (*en banc*).

These decisions are poorly reasoned. They begin with the premise that rape is a general intent crime, and they point out that a defendant who claims consent admits knowingly engaging in an act of sexual intercourse. From this, the cases prematurely conclude that the defendant, by claiming consent, has admitted both the *actus reus* and the culpable mental state for the offense. They reason that the only fact remaining in dispute is the victim's lack of consent—an issue which they assume to be unrelated to the defendant's mental state. *See Key*, 203 Cal.Rptr. at 148; *Saltarelli*, 655 P.2d at 701. *See also State v. Houghton*, 272 N.W.2d 788, 791–92 (S.D.1978) (overruled by *State v. Willis*, 370 N.W.2d 193, 197–98 (S.D.1985)).

Atop this analytical foundation, *Key*, *Saltarelli*, and similar cases build the conclusion that defendants in rape cases who claim consent do not place their intent in issue. This conclusion is as shaky as its logical underpinnings are flawed. These cases are mistaken in two respects: first, in their understanding of the scope of the intent exception to Rule 404(b), and, second, in their understanding of the elements of the crime of rape—more particularly, the requirement that the state prove the victim's lack of consent.[3]

---

**3.** In addition, *Key* seems to place significance on the conclusion that, because the state bears the burden of proving the lack of consent to begin with, the fact that the defendant expressly raises a consent defense adds no new element to the state's burden and therefore cannot be relied

on as a basis for justifying the admission of evidence that would not otherwise be permitted. *See Key*, 203 Cal.Rptr. at 148. This reasoning, however, simply misinterprets the common restriction that limits reliance on the intent exception to Rule 404(b) to cases in which intent is

The starting point of analysis in *Key* and *Saltarelli* is that rape is a general intent crime. The underlying premise seems to be that the intent exception to Rule 404(b) has no application—or is at least of less significance—in cases involving only knowing or reckless conduct; the cases seem to assume that for the intent exception to apply, specific intent must somehow be at issue. This is simply incorrect. Rule 404(b) uses the word "intent" as a convenient form of shorthand to denote any aspect of the accused's culpable mental state that is included as an element of the prosecution's case:

> The 'intent' exception should be read broadly so as to cover any required mental element of the crime whether malice or knowledge or the absence of mistake, accident, or duress or intoxication.

Wright & Graham, § 5242 at 487.

The second mistake made by *Key* and *Saltarelli* lies in their characterizing the state's duty to prove lack of consent as one that deals only with the conduct of the victim and that has nothing to do with the culpable mental state of the accused. Even Judge Singleton's opinion in the present case expressly disavows this view and acknowledges that it amounts to a significant oversimplification.

Under Alaska law, the crime of rape—sexual assault in the first degree—is defined to include any act of "sexual pen-

etration with another person without consent of that person." AS 11.41.410(a)(1). We construed this provision in *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App.1983). Under the interpretation we adopted in *Reynolds*, in order to prove the crime, the state must first show an act of sexual penetration by the defendant. This is the prohibited conduct, or *actus reus*, of the offense. The prosecution must next show that the victim did not consent. Lack of consent, a surrounding circumstance, comprises the second element of the state's case. As to each of these two elements, the state is required to prove the defendant's culpable mental state. With respect to the prohibited conduct—the act of sexual penetration—the state must show that the defendant acted knowingly. With respect to the surrounding circumstance—the victim's lack of consent—the state must prove that the defendant acted recklessly.[4]

The state's duty to prove lack of consent thus actually encompasses a two-fold obligation: the first portion of the duty deals with establishing the victim's state of mind and conduct; the second portion addresses the defendant's awareness of the victim's conduct and state of mind, and the defendant's own subjective response to that awareness. These two aspects of lack of consent are inextricably interwoven, and, contrary to the conclusions reached in *Key* and *Saltarelli*, the second aspect plainly involves the defendant's intent—his culpa-

actually disputed. *See Freeman v. State*, 486 P.2d 967, 977–78 (Alaska 1971); Wright & Graham, § 5242 at 489. The significance of the defendant's reliance on a consent defense is not that it imposes on the state the duty to prove a new element, but rather that it places into actual and serious dispute an element that, while there from the outset, might otherwise not have been actively contested.

4. Our interpretation in *Reynolds* was based on our previous ruling in *Neitzel v. State*, 655 P.2d 325, 329 (Alaska App.1982), where we construed the provisions of the Alaska Revised Criminal Code governing general principles of criminal responsibility. Under AS 11.81.600(a), the minimal requirement for criminal liability is "conduct" involving a voluntary act or omission. In all but rare instances, the prohibited conduct must be accompanied by a culpable mental state. AS 11.81.600(b). Under AS 11.81.610, the

elements of any crime may be separated into four categories: conduct, surrounding circumstance, result, and culpable mental state. Where no specific provision for a culpable mental state is made in the definition of an offense, AS 11.81.610 makes the following mental states applicable: for conduct, the prosecution must show that the accused acted knowingly; for a result or a circumstance, the prosecution must show that the defendant acted recklessly. The definition of first-degree sexual assault, as set out in AS 11.41.410(a)(1), does not specify a culpable mental state. In *Reynolds*, relying on *Neitzel's* interpretation of AS 11.81.600 and AS 11.81.610, we concluded that, as to the prohibited conduct—sexual penetration—the applicable mental state is "knowingly"; as to the surrounding circumstance—lack of consent—the applicable mental state is "recklessly."

ble mental state.[5]

It is precisely because the notion of consent intertwines the victim's willingness to consent and the defendant's awareness of that willingness that a defendant cannot affirmatively invoke the former without also invoking the latter. Both are integral parts of the same fabric, and when a defendant asserts that he committed an act of sexual penetration with the victim's consent, he also necessarily asserts his own good faith—that he acted with benign intent, neither knowing of nor disregarding the victim's lack of consent.

It follows that, when a defendant affirmatively claims consent, the issue of culpable mental state becomes actually and seriously disputed: the state will not prevail by convincing the jury merely of the victim's subjective unwillingness to engage in sexual penetration with the defendant, but it must also convince the jury that the defendant knew of or recklessly disregarded the victim's wishes. In these circumstances, evidence of other similar misconduct by the defendant should legitimately be available to the state—subject of course to the balancing process of A.R.E. 403—to shed light on the defendant's intent.

Although actually acknowledging that the notion of lack of consent incorporates the defendant's intent, and although actually conceding—albeit reluctantly—that evidence of similar misconduct may have relevance on this issue, Judge Singleton's opinion in this case inexplicably adheres to

cases like *Key* and *Saltarelli,* which wrongly reach exactly the opposite conclusion. And in the same breath as Judge Singleton's opinion acknowledges the theoretical relevance of evidence of other misconduct on the issue of intent, it summarily dismisses the relevance as insignificant. In the process, the opinion overlooks the limited reach of A.R.E. 404(b). The point made at the outset of this dissent bears repetition: Rule 404(b) operates to categorically exclude evidence of other misconduct only when the sole relevance of that evidence is to establish the defendant's conduct by proving a propensity to engage in like conduct; once any relevance apart from propensity is established, Rule 404(b) ceases to operate as a prohibition, shifting the question of admissibility to the balancing process established in Rule 403.

The balancing test set out in A.R.E. 403, however, is one that is primarily for the trial court to apply. *Alaska Northern Development, Inc. v. Alyeska Pipeline Service Company,* 666 P.2d 33, 42 (Alaska 1983); *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980); *Dyer v. State,* 666 P.2d 438, 451 (Alaska App.1983). The opinions written by the majority of the court in this case give no meaningful deference to that court's superior command over factual issues. Neither opinion advances a satisfactory explanation for the conclusion that the trial court abused its discretion in applying the balancing test.[6]

---

**5.** It might be argued that *Key* and *Saltarelli* are distinguishable because Alaska construes its sexual assault statute differently from California and Washington by requiring proof of recklessness as the culpable mental state the defendant must possess with regard to the victim's lack of consent. No comparable *mens rea* requirement is explicitly recognized in many jurisdictions. This distinction, however, does not restore the validity of the analysis in *Key* and *Saltarelli.* Although Alaska may be unique in affirmatively requiring proof of recklessness with respect to the victim's lack of consent, virtually all jurisdictions recognize, at the very least, a reasonable mistake of fact defense as to the victim's lack of consent. In effect, then, virtually all jurisdictions recognize that the defendant must be shown to have acted at least negligently with respect to the victim's lack of consent. According to Wright & Graham, absence of mistake is among the aspects of culpable mental state in-

cluded in the intent exception to Rule 404(b). *See* Wright & Graham, § 5242 at 487. Thus, even taking into account the potential differences between Alaska law and the substantive provisions governing sexual assault in California and Washington, *Key* and *Saltarelli* are incorrect in concluding that a consent defense does not place the defendant's intent in issue.

**6.** Judge Singleton's opinion also somewhat clouds the issue with a discussion of Alaska cases considering other exceptions to A.R.E. 404(b). It discusses the "lewd disposition" rule articulated in *Burke v. State,* 624 P.2d 1240, 1248–50 (Alaska 1980), and subsequently applied by this court in *Moor v. State,* 709 P.2d 498, 505–07 (Alaska App.1985), *Bolden v. State,* 720 P.2d 957, 960–61 (Alaska App.1986), and *Soper v. State,* 731 P.2d 587, 590–91 (Alaska App.1987). All of these cases address a *sui*

In summarily concluding that, for purposes of proving the November 23 sexual assault of S.F., the probative value of Velez's November 14 attempted assault on G.J. was "more than outweighed by the potential for prejudice," Judge Singleton's opinion seems to assume that the only conceivable relevance of Velez's attempted assault on G.J. lies in its tendency to show Velez's recklessness by establishing that he had prior notice that his conduct was offensive to G.J. and that he was therefore aware of a substantial and unjustifiable risk that similar conduct might be offensive to S.F. This is certainly one point of relevance. Although I am far less willing than the majority of this court to dismiss out of hand the probative value of the evidence under this theory, the point is not determinative. For there is a separate theory under which Velez's attempted assault on G.J. is more directly relevant to prove his culpable mental state in assaulting S.F.

It is important to note preliminarily that the mere fact that the state was required to prove that Velez acted at least recklessly with regard to S.F.'s lack of consent could not preclude the presentation of evidence showing that he acted knowingly or intentionally. Obviously, it would be irrational to argue that a man who deliberately raped a woman should thereafter be able to preclude the state from proving his culpable mental state because the evidence established that he acted intentionally rather than recklessly with regard to lack of consent. Such situations are foreseen and

dealt with in the Alaska Revised Criminal Code, which expressly provides that recklessness may be established not only by evidence of reckless conduct but also by evidence showing one of the higher levels of culpable mental state. Alaska Statute 11.81.610(c) states, in relevant part: "If acting recklessly suffices to establish an element, that element also is established if a person acts intentionally or knowingly."

Because Velez placed his culpable mental state in issue by claiming S.F.'s consent, the state was entitled, under this provision, to establish that he acted with knowledge of S.F.'s lack of consent. The evidence of Velez's recent assault on G.J. did just that. Quite apart from its more tenuous tendency to show that Velez's earlier attack on G.J. placed him on notice of the risk that S.F. might find his advances offensive, the attack on G.J. tended to directly and forcefully establish the probability that Velez was fully aware of S.F.'s state of mind and that he knowingly disregarded it.

This theory of relevance, commonly referred to as the theory of probabilities, has long been recognized as legitimate. Wright & Graham ascribe the theory of probabilities to Wigmore and make a point of noting that it is distinguishable from the use of evidence of other misconduct to show propensity:

> The "intent" exception should be read broadly so as to cover any required mental element of the crime whether malice or knowledge or the absence of mistake, accident, duress or intoxication. The the-

---

*generis* exception that is akin to the "motive" exception expressly provided for in A.R.E. 404(b); the exception permits use of evidence showing prior sexual contact between the defendant and the victim, or a person closely related to the victim, in order to establish the existence of a particular affinity between the defendant and the victim. This exception obviously has nothing to do with the issues of admissibility presented here, and our decisions dealing with this exception are inapposite. Somewhat more pertinent is our decision in *Pletnikoff v. State,* 719 P.2d 1039 (Alaska App. 1986), also discussed by Judge Singleton's opinion and relied on almost exclusively by Velez on appeal. *Pletnikoff* involved a sexual assault prosecution in which the defendant claimed consent. The trial court allowed evidence of a prior episode of sexual contact between the de-

fendant and another woman; it was undisputed, however, that the prior sexual contact was consensual. In reversing as violative of A.R.E. 404(b) the trial court's admission of evidence dealing with the prior episode, our decision in *Pletnikoff* considered and rejected various of the listed exceptions to the rule, including common scheme and plan, *modus operandi,* and motive. The intent exception, however, was not argued or considered as a theory of relevance; the reason for this seems apparent: because the prior incident of sexual contact in *Pletnikoff* was acknowledged to have been consensual, it could have had no conceivable relevance on the issue of intent. To the extent that *Pletnikoff* contains any discussion of the intent exception to Rule 404(b), the discussion is clearly *dicta,* addressing an issue that was not only unnecessary but also not raised.

ory upon which evidence of other crimes is admissible on these issues under Rule 404(b) is that its use on the mental element of the offense does not require an inference as to the character of the accused or as to his conduct.... As Wigmore explains, the evidence of intent can be offered on the theory of probabilities. We can accept the defense that an accused car thief had a good faith belief that he had permission to take an automobile on one occasion but when the evidence shows that he made similar "mistakes" before, our doubts grow. It is the improbability of these fortuities rather than any inference as to the character of the accused that supports the belief in guilt.

Wright & Graham, § 5242 at 487–88 (footnotes omitted). It seems to me that this is the precise theory upon which we have previously found comparable proof to have manifest relevance as evidence of intent. *See Davis*, 635 P.2d at 485.

Wright & Graham go on to observe that "[s]imilarity of offenses is an important consideration when the evidence of other crimes is offered to prove intent on Wigmore's theory of improbability [sic]." Wright & Graham, § 5242 at 491. In the present case Judge Johnstone correctly noted numerous points of factual similarity between Velez's assault on S.F. and his earlier assault on G.J. Judge Johnstone also properly considered that the two crimes were closely related in time, occurring within approximately two weeks of each other. Given the circumstantial and temporal similarity between the two offenses, I see utterly no basis for concluding that Judge Johnstone abused his discretion in finding that the probative value of Velez's prior attempted assault on G.J. was substantially outweighed by its potential for prejudicial impact.

In reaching a contrary conclusion and finding that the evidence of Velez's other assaults was more prejudicial than probative, the majority of the court appears to misunderstand the relevance of the disputed testimony under the theory of probabilities. Ironically, it is perhaps because the disputed testimony has such forceful weight as evidence of probability that the majority of the court confuses it with impermissible evidence of propensity.

Certainly, the evidence of Velez's other sexual misconduct in this case must have had compelling impact, and in all likelihood it made the jury's task a relatively simple one. Yet, the chief convincing force of the disputed testimony lay not in its indirect tendency to establish Velez's guilt by showing that he was the type of person who committed sexual assaults and that he must therefore have acted in conformity with his character in committing the sexual assaults charged. Rather, the evidence had more obvious and immediate impact because it directly refuted Velez's claim that he acted with innocent intent. That Velez might falsely be accused of rape after engaging in consensual sexual intercourse with one woman would not, in the abstract, be implausible. But the evidence here showed that in a one-month period Velez engaged or attempted to engage in sexual intercourse with three separate women, all of whom claimed rape.

In light of this evidence, the probability that Velez acted out of a reasonable and good faith belief that he was engaging in consensual sexual intercourse seems staggeringly low. Crucially, the conclusion that Velez's consent defense is improbable is one that derives exclusively from the sheer improbability of three false accusations arising under similar circumstances in such a short period of time. This conclusion is distinct from and entirely independent of any tendency of the disputed evidence to show propensity; it does not entail the intermediate, and impermissible, inference that Velez is the type of person who commits rape and that he must therefore have committed the rapes with which he was charged: "It is the improbability of these fortuities rather than any inference as to the character of the accused that supports the belief in guilt." *Id.*

The force of the disputed testimony as evidence of probability is, in my view, far more compelling than its impact as evidence of propensity. The mere fact that

the evidence is compelling evidence of Velez's guilt should hardly serve as a basis for its exclusion.

Under the theory of probabilities, moreover, the evidence of Velez's sexual assault on S.F. is at least as relevant to establish his intent in committing the attempted assault on G.J. as the evidence of the attempt on G.J. is to show his intent in the assault on S.F. The chronological order of the two assaults is unimportant to probative value under the theory of probabilities, because the issue of whether Velez had "prior notice" that his conduct was offensive simply is not germane. It is the fact of the two occurrences that renders the existence of the culpable mental state significantly more probable in each case, regardless of the order in which the offenses occurred. To the extent that there may be any distinction in probative value, the subsequent sexual assault would seem to have greater relevance as evidence of intent in the earlier case, because the earlier assault on G.J. was charged as an attempt, an offense involving specific intent.

The admissibility of the evidence relating to Velez's uncharged October assault on his former girlfriend, C.S., remains to be considered. While the circumstantial similarities of the October assault are perhaps not as great as the similarities between the assaults on G.J. and S.F., they are nonetheless significant. The October assault was also closely related in time to the two charged offenses. Even more significantly, the evidence of the October assault on C.S. was admitted on rebuttal, in direct response to testimony by Velez that inaccurately explained his prior differences with C.S. In this context, admission of C.S.'s testimony concerning the prior offense was not an abuse of discretion.

Given the cross-admissibility of the challenged evidence of other misconduct, I would conclude that the trial court's failure to grant a severance was, at most, harmless error.[7] Accordingly, I would affirm Velez's conviction.

---

7. Velez also argues that the trial court erred in denying a motion for continuance made by his trial counsel. In requesting the continuance, however, Velez's trial counsel asserted only a generalized need for additional time to prepare, without specifying any particular matter that remained to be done. On appeal, Velez has failed to point out any specific deficiency or omission as having resulted from inadequate preparation by trial counsel or from the denial of the requested continuance. Velez does not claim that his trial counsel afforded him ineffective assistance. The time given to Velez's trial counsel for preparation prior to trial—a period of approximately five weeks—is certainly not in and of itself so short as to give rise to an inference that effective assistance could not be provided. Absent a more specific showing of prejudice, I would find no abuse of discretion in the trial court's denial of Velez's motion for a continuance. *Patterson v. State,* 689 P.2d 146, 148 (Alaska App.1984).