**Robert BOLDEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–754.**

Court of Appeals of Alaska.

June 27, 1986.

---

John M. Murtagh, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Robert Bolden was convicted, after a jury trial, of three counts of lewd and lascivious acts toward children, former AS 11.15.135(a), and of one count of rape, former AS 11.15.120(a). The victims were Bolden's daughters, R., then age thirteen or fourteen, and M., then age eleven or twelve. The incidents occurred in December 1978 and throughout 1979.

Concerning the incident charged in Count I of the indictment, R. testified that Bolden had offered to pay her $50 to "give him head." R. testified that Bolden forced her to touch his penis after she refused. In addition to this incident, R. testified that Bolden frequently fondled her breasts, and that Bolden had touched her vagina on numerous occasions.

R. also testified to other incidents involving Bolden, herself, her sisters, and her friends. R. testified that she had seen Bolden fondling her sister K.'s vaginal area. She also testified that Bolden supplied herself and one of her friends with liquor, and that Bolden attempted to molest her friend. R. additionally testified that Bolden had once attempted penile intercourse with her, and that he had attempted to bribe her to have sex with him. The state charged Bolden with one incident only with respect to R.—that being the incident when he offered R. the fifty dollars.

The other three counts of the indictment charged Bolden with incidents involving M. M. testified that Bolden had inserted his fingers into her vagina on four or five occasions. M. also testified that Bolden touched her breasts and forced her to touch his penis.

In addition to the incidents involving her personally, M. testified that she saw Bolden with his hand under the bed covers

near R.'s vaginal area. M. also related an incident where she heard a friend, who was spending the night, tell Bolden to "stop it." M. similarly described an incident involving another friend who was also spending the night. In this incident, M.'s friend apparently became intoxicated on liquor that Bolden had supplied and had intercourse with Bolden. The victims were all minors.

In addition to Bolden's two daughters' testimony, the state presented several other witnesses who testified about uncharged sexual acts. A third daughter, K., reluctantly testified for the state. She testified that Bolden had touched her breast and vagina. She also indicated that she had seen Bolden touch her sisters, and corroborated M.'s account of the incident where Bolden had supplied liquor and had sexual intercourse with M.'s friend. Bolden's daughters' mother (Bolden's ex-wife) testified that she had seen one incident in which Bolden was fondling K.

The state called several other minor victims to testify. One testified that Bolden had lain on top of her, without her consent, and tried to force her legs apart, and that Bolden had bought her liquor. Another testified that Bolden pulled her close to him on the couch and asked her to take off her robe. Yet another testified that Bolden kissed her without her permission. Finally, the state called a minor who related two separate incidents involving Bolden. First, she testified that Bolden, M., and herself were all in Bolden's bedroom naked. She testified that Bolden performed cunnilingus upon her, digitally penetrated her, and forced her to perform fellatio upon him. Second, she testified that Bolden bought her, R., M., and another friend liquor and ordered them to take their underwear off. She testified that Bolden then had intercourse with the other friend, while she and Bolden's daughters watched. All of the described incidents occurred when the witnesses were spending the night at the Bolden home when Bolden's wife was away [1]

and appear to have occurred within a three-year period.

■ The state, by motion *in limine*, sought admission of the uncharged incidents of sexual misconduct. Over Bolden's opposition, Judge J. Justin Ripley granted the state's request. Bolden now appeals, contending that under Evidence Rule 404(b) this testimony should not have been admitted at trial.

Evidence Rule 404(b) provides:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) is always read in conjunction with Rule 403. *Lerchenstein v. State*, 697 P.2d 312, 315–16 (Alaska App.1985), *petition for hearing granted* (Alaska, June 25, 1985). Rule 403 provides:

*Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.*

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The supreme court has held that Rule 404(b) is a rule of exclusion not inclusion, and it is presumed that the prejudicial impact of introducing evidence of prior bad acts outweighs its probative value in proving propensity. *Oksoktaruk v. State*, 611 P.2d 521, 524 (Alaska 1980). However, if the evidence is relevant to prove a material fact, other than propensity, the court may admit the evidence if a Rule 403 balancing shows that the evidence is more probative

---

**1.** The exception is the incident with K. where Bolden's wife testified that she saw Bolden fondle K.

than prejudicial. *Lerchenstein*, 697 P.2d at 315–16. In Lerchenstein we stated:

> The trial court's inquiry, then, is two-fold. First, the court must determine that the evidence sought to be admitted has relevance apart from propensity. Second, the court must determine that the nonpropensity relevance outweighs the presumed highly prejudicial impact of the evidence. If there is no genuine non-propensity relevance, the balancing step is never reached. [Footnote and citations omitted.]

*Id.*

In *Moor v. State*, 709 P.2d 498 (Alaska App.1985), we indicated that in cases of sexual abuse the trial court must "carefully scrutinize" evidence of uncharged sexual acts. In deciding *Moor*, we rejected the state's argument that incidents of sexual abuse are always admissible in sexual abuse cases to show "lewd disposition." *Id.* at 506. The state, in *Moor*, relied on the supreme court's holding in *Burke v. State*, 624 P.2d 1240, 1249 (Alaska 1980), to support its contention that evidence of prior sexual misconduct is always admissible. *Moor*, 709 P.2d at 506. In *Burke*, the supreme court held that evidence of prior sexual misconduct with the *same* victim is admissible. *Burke*, 624 P.2d at 1249. After analyzing *Burke*, we stated in *Moor*:

> We decline to extend the *Burke* ruling to include evidence of sexual conduct with persons other than the victim. When evidence of the defendant's sexual conduct with someone other than the victim is introduced, such evidence of "lewd disposition" is conceptually indistinguishable from evidence of "propensity." Our rejection of the state's position does not mean that a trial court should never allow the admission of evidence of prior sexual misconduct with someone other than the victim in sexual abuse cases. It does mean that the trial court should carefully scrutinize such evidence to ensure that it does come within one of the exceptions to the rule of exclusion, and is not disguised propensity evidence. [Citations omitted.]

■ We conclude that the trial court erred in admitting evidence of the numerous sexual acts which Bolden allegedly committed with victims other than those named in the indictment. The record in this case does not show that the evidence was relevant to a material fact other than propensity. Bolden's identity as the perpetrator of the offenses charged in the indictment was not a disputed issue, and there were no claims of accident or mistake. *See Pletnikoff v. State*, 720 P.2d 957 (Alaska App., 1986) (refusing to allow uncharged sexual acts to prove non-propensity facts that are not disputed or relevant to the charge). The only real question in this case was whether Bolden committed the acts with which he was charged. The only apparent purpose for admitting the evidence of the other alleged acts appears to be to corroborate the testimony of Bolden's daughters that they were molested.

■ The state, however, contends that the acts were admissible under the common scheme or plan exception to Rule 404(b). In making this argument, the state urges this court to adopt the reasoning of *People v. Thomas*, 20 Cal.3d 457, 143 Cal.Rptr. 215, 573 P.2d 433 (Cal.1978). In *Thomas*, the California Supreme Court analyzed the admission of extraneous uncharged sex crimes, under the "common scheme or plan" exception to the California rule excluding evidence of other crimes or bad acts. The California Supreme Court stated:

> [A]lleged sex offenses committed with persons other than the prosecuting witness are often unreliable and difficult to prove, nevertheless such evidence is admissible to show a common design or plan where the prior offenses (1) are not too remote in time, (2) are similar to the offense charged, and (3) are committed upon persons similar to the prosecuting witness.

*Id.* 193 Cal.Rptr. at 218–19, 573 P.2d at 436–37. According to the California Supreme Court the test of admissibility is:

whether there is some clear connection between that [prior] offense and the one charged so that it may be logically inferred that if defendant is guilty of one he must be guilty of the other. Or as the matter is sometimes stated, the other offenses ... are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged.

*Id.* 143 Cal.Rptr. at 219, 573 P.2d at 437.

However, in *People v. Tassell,* 36 Cal.3d 77, 201 Cal.Rptr. 567, 679 P.2d 1 (Cal.1984), the California Supreme Court rejected the above-stated rationale. *Id.* 201 Cal.Rptr. at 574, 679 P.2d at 8 n. 8. The court held that to be admissible, evidence of other crimes must relate to an actual issue in dispute at trial, such as the identity of the perpetrator or a claim that the alleged crime was an accident or mistake. *Id.* 201 Cal.Rptr. 573–74, 679 P.2d at 7–8.

■ In *Tassell,* the California court concluded, under facts similar to those presented in the instant case, that admission of the defendant's previous similar sexual acts, with another victim, constituted inadmissible propensity evidence.[2] We similarly conclude that the trial court erred in admitting the evidence of Bolden's sexual acts with other victims in the present case. Essentially, the evidence introduced at Bolden's trial showed that, in addition to his daughters, Bolden had a propensity to sexually assault many of the young women who came into his house. Neither intent nor identity were at issue in his trial. Because the acts did not constitute an admissible common scheme or plan, or prove facts in dispute, we believe that the evidence concerning alleged assaults on victims other than Bolden's daughters was improper propensity evidence, forbidden from inclusion at trial by Evidence Rule 404(b). We therefore reverse Bolden's conviction.[3]

REVERSED.

---

**2.** The following from Wright and Graham, is a helpful discussion of this issue.

> A recent Washington case [*State v. Bennett,* [36 Wash.App. 176] 672 P.2d 772 (Wash.App. 1983)] illustrates the problem many courts have in distinguishing between "plan" and "modus operandi" as grounds for admission of other crimes. The defendant was charged with two counts of statutory rape and two uncharged crimes were admitted. In all of these, the defendant had enticed teenage runaways into exchanging sex for food and shelter. This common modus operandi was said to be admissible under Rule 404(b) to prove that defendant had engaged in intercourse as part of a plan to take advantage of runaways in this fashion.
>
> This is evidence of propensity, not plan. But the opinion suggests that what misled the court was to read "plan" to mean something like a blueprint. Proof that the witch had constructed one gingerbread house will support an inference that she has the "plans" for this type of architectural endeavor but it does not prove whether or not she will ever use the blueprint to construct another lure for lost children. It is only when we can infer a plan for a subdivision to be called "Gingerbread Acres" that we can infer from the plan that the witch also constructed a second house.
>
> To say that the defendant had a "plan" to seduce every runaway he could may not do violence to the language but it does undermine the policy of Rule 404(b) by permitting the use of propensity to prove conduct. To be properly admissible under Rule 404(b) it is not enough to show that each crime was "planned" in the same way; rather, there must be some overall scheme of which each of the crimes is but a part. [Footnotes omitted.]

22 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5244 at 359 (Supp.1985). We note that the California Supreme Court held that admission of the other acts was harmless error. We cannot come to the same conclusion under the present facts. *See Love v. State,* 630 P.2d 21 (Alaska App.1981).

**3.** Our disposition of this issue makes it unnecessary to address the other issue which Bolden raises on appeal.