NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JONDEAN WILLOCK, | Court of Appeals No. A-11379 |
| Appellant, | Trial Court No. 4FA-11-366 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2554 — May 26, 2017 |

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

JonDean Willock appeals his conviction for first-degree sexual assault. The question presented on appeal is whether the trial judge should have allowed the State to

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

introduce evidence of Willock's prior conviction for sexual assault. For the reasons explained in this opinion, we conclude that the trial judge should not have allowed the State to introduce this evidence, and that this error requires reversal of Willock's conviction.

*Underlying facts*

The State's case was based on evidence that Willock lured a woman, R.F., to his apartment by promising her that she could use his telephone to call a cab. According to the State's evidence, after Willock and R.F. entered the apartment, Willock sat down next to her on a couch, put his arm around her, and tried to kiss her. R.F. told Willock "no", and she began to struggle. During this struggle, R.F. wriggled to the floor. Willock then got on top of R.F. and held her down. According to R.F., Willock stuck his hand down her pants and digitally penetrated her. R.F. continued to struggle (punching, scratching, and biting Willock), and she screamed for help. After a few minutes, Willock stopped attacking R.F., and she was able to run out of the apartment.

R.F. sought help at a neighbor's apartment, where she called 911. When the troopers arrived to investigate, they saw Willock walking through the parking lot near his apartment complex. He had scratches on his face and fresh blood on his nose.

When the troopers questioned Willock, he admitted that he had been with R.F. that evening. Willock said that R.F. had been in his apartment, and he recalled R.F. leaving the apartment, but he told the police that he had no memory of what happened while R.F. was in his apartment.

Based on the foregoing evidence, Willock was indicted on one count of first-degree sexual assault.

*The trial judge's decision to allow the State to introduce evidence of Willock's prior conviction for sexual assault, and the prosecutor's use of this evidence at Willock's trial*

Before trial, the State asked the superior court for permission to introduce evidence that Willock had a prior conviction for sexual assault.

In this prior incident, Willock broke into a woman's apartment and, despite her vigorous resistance, he assaulted her over the next two hours. Willock ultimately pleaded no contest to first-degree burglary and first-degree sexual assault. He spent most of the next 10 years in prison. He was released about 3 months before the incident in the present case.

The superior court granted the State's request to introduce evidence of this prior sexual assault. Based on what the judge called the "great similarities" between the facts of the present case and the facts of Willock's prior burglary and sexual assault, the judge ruled that evidence of Willock's prior offense was admissible under Alaska Evidence Rule 404(b)(1) for four purposes: to show Willock's "plan" to commit sexual assault, his "intent" to commit sexual assault, his "knowledge" that his conduct was "sexual in nature", and Willock's "lack of reasonable mistake" regarding R.F.'s willingness (or lack of willingness) to engage in sexual activity with him.

The evidence of Willock's prior conviction for sexual assault formed a significant part of the State's case at trial. During his opening statement, the prosecutor told the jury that the present case "[was not] the first time that [Willock] has had these kinds of difficulties." The prosecutor described the facts of the prior sexual assault, and he told the jurors that this prior sexual assault showed that Willock "[knew] what is illegal activity, and what is sexual activity, and what is reckless disregard of [the nature of] a person's [own] behavior."

During closing argument, the prosecutor returned to Willock's prior conviction for sexual assault. The prosecutor argued that Willock's assault on R.F. was similar to the prior sexual assault, and he asserted that Willock's commission of the earlier sexual assault showed that Willock recklessly disregarded R.F.'s lack of consent in the present case.

*An overview of Alaska Evidence Rule 404(b), and a summary of a trial judge's duties under this rule*

Evidence Rule 404(b)(1) is deceivingly simple in its wording. It contains two sentences, each of which states an apparently straightforward principle.

The first sentence of the rule declares that evidence of a person's past acts is never admissible "if the sole purpose for offering the evidence is to prove the [person's] character ... in order to show that the person acted in conformity [with that character]." This is simply a reiteration of the principle codified in Evidence Rule 404(a): "Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]"

The second sentence of Rule 404(b)(1) declares that evidence of a person's past acts can be admissible if the evidence is offered for *other* purposes (*i.e.*, purposes other than proving the person's character). This second sentence lists several examples of non-character purposes: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." But as our case law clarifies, this list is non-exclusive. [1] Evidence of a person's past acts is admissible for *any* non-

_____

[1] *See Petersen v. State*, 930 P.2d 414, 432 (Alaska App. 1996).

character purpose — subject to a trial judge's duty to balance the probative value of the evidence against its potential for unfair prejudice under Evidence Rule 403.

But despite the apparently straightforward wording of Rule 404(b)(1), this rule has proved difficult for judges to apply in practice. [2]

As we recently explained in *Belcher v. State*, 372 P.3d 279, 285 (Alaska App. 2016), one of the main difficulties is that the words used in the second sentence of Rule 404(b)(1) — "intent", "motive", "plan", "knowledge", and "mistake" — must be understood in a limited technical sense, rather than in the broader sense in which they are used in everyday speech. [3]

In the present case, Willock was accused of engaging in sexual penetration with a woman without her consent. In everyday English, we might say that Willock should be found guilty if he "intended" to engage in this act of sexual penetration, or if he "planned" to engage in this act of sexual penetration, or if he "knew" that he was engaging in sexual conduct without the woman's consent — *i.e.*, that he was not "mistaken" about the woman's willingness to engage in this sexual conduct.

The problem in this case stems directly from the fact that, when the prosecutor sought permission to introduce evidence of Willock's prior offense, he used

---

[2]  Several courts and commentators have acknowledged that Federal Evidence Rule 404(b) — the counterpart to our Rule 404(b)(1) — is perhaps the most litigated evidence rule. "The limitations of [Federal Evidence] Rule 404(b) on the admissibility of evidence of extrinsic offenses have produced one of the most frequently litigated questions of evidence." *United States v. Salomon*, 609 F.2d 1172, 1176 (5th Cir. 1980), citing Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* (1st edition 1978), § 5239, Vol. 22, p. 427. In *United States v. Davis*, 726 F.3d 434, 441 (3rd Cir. 2013), the court declared that Federal Evidence Rule 404(b) was "the most cited evidentiary rule on appeal."

[3]  See, in particular, our discussion of the technical meanings of "intent", "plan", and "mistake" in *Belcher*, 372 P.3d at 283-84.

these terms in their colloquial sense, rather than in their narrower legal sense — and the trial judge adopted the prosecutor's position without demur.

But a trial judge must not allow a prosecutor (or a defense attorney, for that matter) to simply recite the various permitted purposes listed in Rule 404(b)(1) and to make generalized assertions about how a person's past acts show their "intent", "plan", "knowledge", or "absence of mistake or accident". When a trial judge evaluates an attorney's request to introduce evidence under Rule 404(b)(1), the judge must apply these words in their technical sense, and the judge must decide whether the proposed evidence truly has a case-specific relevance *other than* proving the defendant's general desire or willingness to engage in the kind of criminal behavior at issue in the case. [4]

To perform this duty, a judge must identify the issues that are really being disputed — evaluating the evidence in light of the way the parties are litigating the case. Only then can the judge meaningfully assess whether the proposed evidence has a case-specific relevance aside from proving the defendant's characteristic willingness to engage in the charged criminal conduct.

*Our analysis of the superior court's ruling in this case*

The State presented evidence that Willock sexually assaulted a woman after luring her to his apartment by promising her that she could use his telephone to call a cab. Willock's defense to this charge was that there had been no sexual contact between him and R.F. — no sexual penetration, nor even attempted sexual penetration. According to the defense attorney's opening statement, R.F. went voluntarily to Willock's apartment, and she and Willock began "making out". But then, when Willock

---

[4] *See Linehan v. State*, 224 P.3d 126, 147 (Alaska App. 2010); *Smithart v. State*, 946 P.2d 1264, 1270-71 (Alaska App. 1997).

tried to "take it further" by putting his hands around R.F.'s back, she "freak[ed] out" — scratching Willock in the face, and then running from the apartment.

Given the conflicting evidence, and given the litigation strategies of the parties, it was obvious that if Willock engaged in the behavior alleged by the State, then one could say that he "knew" that his actions were sexual, and that he "intended" to assault R.F., and that he did not assault her by "mistake".

But none of these were real issues in Willock's case. Because of the way Willock's case was litigated, the real question that Willock's jury confronted was whether *any* sexual contact occurred between Willock and R. F. — *i.e.*, whether events transpired the way the State alleged or, instead, the way the defense alleged.

Given this context, Willock's prior conviction for sexual assault had only one true ground of relevance: it showed that Willock was the kind of person who would sexually assault a woman. And Evidence Rule 404(b)(1) prohibits evidence of a person's past acts when it is offered for this purpose.

Nevertheless, when the superior court ruled on the State's request to introduce evidence of Willock's prior sexual assault, the court concluded that evidence of the prior sexual assault was relevant for four non-character purposes:

- to prove Willock's "plan" to sexually assault R.F.,
- to prove Willock's "intent" to sexually assault R.F.,
- to prove Willock's "knowledge" that his conduct was sexual in nature, and his "knowledge" that R.F. did not consent to this conduct, and
- to prove that Willock was not "mistaken" regarding R.F.'s willingness (or lack of willingness) to engage in sexual activity with him.

None of these rationales holds up when subjected to analysis.

As to the proposed rationales of "plan" and "intent", the superior court reasoned that Willock's prior act of sexual assault "[made] it ... more probable that his

actions were intentional and [were] taken pursuant to a premeditated plan." But though the superior court phrased its ruling in terms of non-character purposes, Willock's case did not present any issue of "plan" or "intent" as those terms are used in Evidence Rule 404(b)(1).

When Rule 404(b)(1) speaks of evidence proving a person's "intent", the rule is addressing situations where the government must prove a mental state — either a culpable mental state that is an element of the crime or, in a more general sense, a mental state that is put in issue when the defendant raises a defense of mistake, accident, inadvertence, duress, or the like. *See* Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* (2014), § 5242 Vol. 22 B, pp. 151-52.

Willock's case did not present this kind of situation. Willock did not defend by asserting that he engaged in consensual sexual penetration with R.F., or that he made a reasonable mistake regarding R.F.'s consent, or that he inadvertently penetrated her. Rather, Willock's defense was that he did not engage in sexual penetration with R.F. at all.

With regard to Rule 404(b)(1)'s use of the word "plan", we explained in *Bolden v. State*, 720 P.2d 957 (Alaska App. 1986), that the rule uses the term "plan" in a specific, narrow sense. It does not refer to the concept that the defendant wanted to commit a crime and "planned" to do so if given the opportunity. Rather, Rule 404(b)(1) uses the word "plan" in the sense of an over-arching scheme — a scheme in which the crime currently charged against the defendant plays some role:

> To say that the defendant had a "plan" to seduce every runaway he could may not do violence to the language [of Rule 404(b),] but it does undermine the policy of Rule 404(b) by permitting the use of propensity to prove conduct. [In order for evidence of prior crimes to] be properly admissible under Rule 404(b)[,] it is not enough to show that each crime

was "planned" in the same way; rather, there must be some overall scheme of which each of the crimes is but a part.

*Bolden*, 720 P.2d at 961 n. 2 (quoting Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence*, § 5244 (1985), Vol. 22 C, p. 359).

The trial court's ruling in this case suffers from the same flaw as the ruling that we reversed in *Bolden*. Although the trial court used the words "intent" and "plan", the trial court's reasoning rested on viewing Willock's prior crime as an indication of his general desire or willingness to sexually assault women, and then viewing this trait of character as predictive of Willock's actions in the present case. This is the rationale prohibited by Evidence Rule 404(b)(1).

See our discussion of this point in *Velez v. State*, 762 P.2d 1297, 1304 (Alaska App. 1988). The defendant in *Velez* was accused of "date rape" (*i.e.*, inviting a woman out, then using threatening words and/or behavior to coerce her into having sex with him). At trial, the State offered testimony from two other women that Velez had engaged in similarly coercive behavior when they dated him.[5] We held that this evidence should have been rejected because the probative value of the evidence implicitly rested on the inference that Velez had a propensity to sexually assault his dating partners.[6]

Similarly, the evidence of Willock's prior sexual assault was not admissible to prove that Willock "planned" or "intended" to sexually assault R.F. — *i.e.*, to prove that Willock acted with general criminal intent.

---

[5]   *Id.* at 1298-99.

[6]   *Id. at* 1303-04. Also see our related discussions of this issue in *Carpentino v. State*, 38 P.3d 547, 549-551 (Alaska App. 2002), and *Bolden v. State*, 720 P.2d 957, 960-61 & n. 2 (Alaska App. 1986).

Turning to the trial judge's remaining rationales for admitting this evidence, the judge ruled that evidence of Willock's prior sexual assault was relevant to prove Willock's "knowledge" and "lack of mistake" — *i.e.*, to prove that Willock knew that R.F. was unwilling to have sex with him, and that Willock made no mistake regarding R.F.'s lack of willingness to engage in sex with him. But these issues were not in dispute.

Willock did not defend this case by asserting that he engaged in sex with R.F. under the reasonable belief that she consented to this sexual activity. Rather, as we have explained, Willock's defense was that *no sex* occurred — and this was clear as early as the defense attorney's opening statement.

In sum, even though the superior court's ruling was phrased in terms of "intent", "plan", "knowledge", and "lack of mistake", the evidence of Willock's prior sexual assault was in fact being used to establish (1) that Willock had a proclivity to sexually assault women, and (2) that this proclivity was circumstantial evidence that R.F.'s allegation of sexual assault was true, because Willock could be expected to act true to character. This chain of inference is prohibited by Evidence Rule 404(b)(1).

In its brief to this Court, the State suggests that even if the evidence of Willock's prior sexual assault may have turned out to lack any proper relevance (*i.e.*, to lack any relevance apart from the inference based on character that is barred by Evidence Rule 404(b)(1)), we should nevertheless affirm the superior court's decision because the court was asked to make its ruling before Willock's trial began — at a time when Willock had not yet firmly committed himself to a particular line of defense.

It was not until Willock's attorney delivered her opening statement, on the first day of trial, that Willock unambiguously adopted a "no sexual contact occurred at all" defense. The State argues that, under these circumstances, Willock's attorney was

2554

required to affirmatively ask the superior court to revisit its pre-trial ruling after the attorney announced Willock's theory of defense.

We acknowledge that trial judges are often asked to make pre-trial rulings regarding the admissibility of evidence under Evidence Rule 404(b)(1). Indeed, under this Court's decision in *Moor v. State*,[7] a party who wishes to introduce evidence of other bad acts under Evidence Rule 404(b)(1) must give advance notice. This means that judges will often be asked to issue their rulings before they are fully acquainted with all the evidence in the case, and before they know the details of the parties' litigation strategies.

In such circumstances, a judge may ask the attorneys to disclose enough about their anticipated evidence and their theories of the case to allow the judge to meaningfully evaluate the Rule 404(b)(1) request. Alternatively, a judge may defer their ruling until the judge knows enough about the case to make an informed ruling. Or a judge may issue a conditional ruling — a ruling that the proposed evidence will be admissible unless the defense attorney affirmatively disavows certain defenses (*e.g.*, consent), or a ruling that the evidence will become admissible if the defense attorney raises particular issues or presents particular theories of defense in their opening statement, or through cross examination of government witnesses, or through the direct testimony of defense witnesses.

But here, the superior court issued a pre-trial order that unconditionally authorized the State to introduce Rule 404(b)(1) evidence based merely on the *possibility* that Willock's mental state might be actively disputed at trial. This was error.

The error became prejudicial because, at the beginning of Willock's trial, his attorney clearly disavowed a consent defense, but the State proceeded to introduce

---

[7] 709 P.2d 498, 506 (Alaska App. 1985).

evidence of the prior sexual assault anyway — even though this evidence had no relevance except the inference based on character that is prohibited by Evidence Rule 404(b)(1).

*Conclusion*

Evidence of a person's past acts is not admissible if its sole relevance is to prove the person's general desire or willingness to engage in criminal behavior of the kind that is at issue in the case. Before a trial judge authorizes the admission of Rule 404(b)(1) evidence, the judge must assess whether, under the particular facts of the case, and in light of the way the parties are litigating the case, (1) the proposed evidence is relevant for some purpose *other* than to prove the person's general desire or willingness to engage in the criminal behavior at issue, and (2) the issue to which the evidence is relevant is an issue that is actually disputed.

Here, the superior court allowed the State to introduce evidence that failed to meet this test, and there is a substantial chance that the introduction of this evidence affected the verdict. [8] Accordingly, the judgement of the superior court is REVERSED.

---

[8] *Rantala v. State*, 216 P.3d 550, 563 (Alaska App. 2009); *Cornwall v. State*, 915 P.2d 640, 649 (Alaska App. 1996); *Love v. State*, 457 P.2d 622, 629-631 (Alaska 1969).