NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ADAM KEITH KASGNOC SR.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12091
Trial Court No. 3AN-12-08627 CR

O P I N I O N

No. 2648 — June 28, 2019

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael R. Spaan, Judge.

Appearances: Michael L. Barber, Barber Legal Services, Boston, Massachusetts (opening brief), and Michael Horowitz, Law Office of Michael Horowitz, Palmer (reply brief), under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Tamara E. DeLucia, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Adam Keith Kasgnoc Sr. appeals his convictions for second-degree sexual assault and incest. On appeal, he argues that the trial court erred in admitting, under

Alaska Evidence Rule 404(b)(3), evidence related to his prior sexual abuse of a minor. For the reasons explained in this opinion, we reject Kasgnoc's claim, and we affirm his convictions.

*Underlying facts*

In August 2012, the State accused Kasgnoc of sexually penetrating his twenty-year-old daughter, L.K., while she was incapacitated or unaware of the sexual act. On the night of the incident, L.K. was sleeping at Kasgnoc's apartment. She reported that, during the night, she awoke to find Kasgnoc on top of her, inserting his penis into her vagina. L.K. pushed Kasgnoc off, dressed, and left the apartment. L.K. subsequently reported the assault to the police.

A grand jury indicted Kasgnoc for second-degree sexual assault and incest.[1] Kasgnoc was tried twice. The first trial ended in a mistrial after the jury deadlocked. A second jury convicted Kasgnoc of both charges.

Kasgnoc testified in his defense at both trials, providing a different version of events than L.K. Kasgnoc testified that after L.K. arrived at his apartment, he told her that she could sleep on the living room floor; he then returned to his room to sleep. Sometime later, he awoke to find that his shorts had been removed and L.K. was lying naked in his bed, touching his penis. Kasgnoc testified that he told L.K. to get out of his apartment, and L.K. dressed and left.

---

[1]   AS 11.41.420(a)(3)(B) & (C) and AS 11.41.450(a)(1), respectively.

*The trial court's ruling on the admissibility of evidence of Kasgnoc's prior sexual abuse of a minor*

In 2001, prior to the events in this case, Kasgnoc was convicted of sexually abusing another one of his daughters, V.K., beginning when she was six years old. During his testimony in the present case, Kasgnoc acknowledged that he initially blamed V.K. for the abuse. He also testified that on some occasions, V.K. initiated the sexual contact. Kasgnoc said that his abuse of V.K. lasted about four years.

During Kasgnoc's first trial on the current charges, the prosecutor argued that evidence of Kasgnoc's prior abuse of V.K. was admissible under Alaska Evidence Rule 404(b)(3) if Kasgnoc raised a consent defense. Evidence Rule 404(b)(3) provides, in relevant part:

> In a prosecution for a crime of sexual assault in any degree, evidence of other sexual assaults or attempted sexual assaults by the defendant against the same or another person is admissible if the defendant relies on a defense of consent.

The trial court disagreed that Kasgnoc's defense was properly characterized as a consent defense. Ultimately, however, Kasgnoc's attorney agreed to introduce evidence of the prior conduct during his direct examination of Kasgnoc. The first trial ended in a mistrial.

Before Kasgnoc's second trial, the prosecutor filed a motion to introduce evidence of the prior conduct under Alaska Evidence Rule 404(b)(4). Evidence Rule 404(b)(4) provides:

> In a prosecution for a crime involving domestic violence or of interfering with a report of a crime involving domestic violence, evidence of other crimes involving domestic violence by the defendant against the same or another person or of interfering with a report of a crime involving domestic violence is admissible. In this paragraph, "domestic

violence" and "crime involving domestic violence" have the meanings given in AS 18.66.990.

Kasgnoc opposed the State's motion to introduce evidence of his prior conduct.

By then, Kasgnoc's case had been reassigned to a different superior court judge. That judge ruled that, if Kasgnoc relied on a consent defense, evidence of his prior conduct involving V.K. would be admissible under Rule 404(b)(3). The court declined to rely on Rule 404(b)(4), concluding that Rule 404(b)(3) governed to the exclusion of Rule 404(b)(4) because Rule 404(b)(3) was specifically applicable to sexual assaults. The court described Rule 404(b)(4) as "more lenient" than Rule 404(b)(3) because Rule 404(b)(3) required a "consent" defense as a prerequisite in a sexual assault case. The court acknowledged that incest was "a crime involving domestic violence" for purposes of Rule 404(b)(4),[2] but the court nonetheless decided to rely solely on Rule 404(b)(3).

The State filed a motion to reconsider, arguing that evidence of Kasgnoc's prior conduct was admissible under Rule 404(b)(4) because the charged offenses and Kasgnoc's prior conduct qualified as crimes involving domestic violence.[3]

The trial judge denied the State's motion. The judge again ruled that the "specific rule for sexual assault" applied over the "general rule for domestic violence."

The judge also noted that, without Kasgnoc raising a consent defense, he considered admission of evidence of the prior conduct more prejudicial than probative.

---

[2]    *See* AS 18.66.990(3)(A) (including, in the definition of "crime involving domestic violence," crimes against a person under AS 11.41 when the crime is committed by one "household member" against another "household member"). "Household member" is separately defined in AS 18.66.990(5).

[3]    *See* AS 18.66.990(3) (defining "crime involving domestic violence").

The court then analyzed the *Bingaman* factors and concluded that he would admit evidence of the prior conduct if Kasgnoc raised a consent defense.[4]

At trial, Kasgnoc raised a defense that the court characterized as a "consent" defense. As we described earlier, Kasgnoc testified that he woke up to L.K. initiating sexual contact with him, and he told her to leave.

The prosecutor devoted a significant portion of the State's case to Kasgnoc's prior abuse of V.K., focusing extensively on this prior conduct during his cross-examination of Kasgnoc. In his closing argument, the prosecutor then relied heavily on Kasgnoc's prior conduct for propensity purposes.

Kasgnoc now appeals.

*Why we affirm the admissibility of the challenged evidence*

In admitting evidence of Kasgnoc's prior conduct under Rule 404(b)(3), the trial court relied on what Kasgnoc asserts is an improper understanding of "consent" in the context of that rule. In his defense, Kasgnoc argued that L.K. initiated the sexual contact, and that when he awoke to L.K. touching him, he demanded that she leave. In short, he maintained that no sexual penetration occurred. The trial court viewed this as a "consent" defense, inferring that by initiating the contact, L.K. was essentially consenting to it.

On appeal, Kasgnoc argues that he did not raise a consent defense, and he therefore contends that evidence of his prior conduct was inadmissible under Rule

---

[4] *See Bingaman v. State*, 76 P.3d 398, 415-16 (Alaska App. 2003) (setting out the factors a trial court must consider before admitting evidence of a defendant's other acts for propensity purposes).

404(b)(3). We agree with Kasgnoc that his defense was not properly characterized as a "consent" defense.[5]

Black's Law Dictionary defines "consent" as: "A voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose."[6] Rule 404(b)(3) is premised on this definition of "consent": if a defendant claims that such an agreement to engage in sexual contact existed, then evidence that the defendant committed past sexual assaults (where such agreement was lacking) becomes relevant.

Here, Kasgnoc was not defending on the ground that he and L.K. engaged in mutually agreed-upon sexual activity — i.e., consensual sex. Rather, he argued that L.K. initiated unwanted sexual contact, and that he terminated the encounter as soon as he woke up to find L.K. in his bed.

Moreover, Kasgnoc was accused of sexually penetrating L.K. A consent defense presupposes that the sexual penetration occurred and that both parties agreed to it. But Kasgnoc argued that no sexual penetration occurred at all.

Because Kasgnoc argued that L.K. initiated the sexual contact, he did not agree or yield to it, and no sexual penetration occurred, Kasgnoc's defense was not a "consent" defense. Accordingly, evidence of Kasgnoc's prior conduct was not admissible under Rule 404(b)(3).[7]

---

[5] Cf. Willock v. State, 400 P.3d 124, 128 (Alaska App. 2017) (suggesting that defendant's denial that any sexual penetration occurred meant that consent was not at issue).

[6] Black's Law Dictionary (10th ed. 2014), at 368.

[7] Because we conclude that evidence of Kasgnoc's prior conduct was not admissible under Rule 404(b)(3) because he did not raise a consent defense, we need not resolve the separate question of whether prior acts of sexual abuse of a minor are admissible under Rule 404(b)(3), since — according to the rule's express terms — it applies only to the admission

(continued...)

That said, we conclude that, even if the evidence of Kasgnoc's conduct with V.K. was not admissible under Rule 404(b)(3), it was admissible under Rule 404(b)(4).

We acknowledge that the trial court disclaimed reliance on Rule 404(b)(4) as a basis of admission. But this ruling rested on the assumption that in a sexual assault case, Rule 404(b)(3) applies to the exclusion of Rule 404(b)(4). Because we questioned the validity of this premise, we requested supplemental briefing from the parties regarding this question and the admissibility of the prior-act evidence under Rule 404(b)(4).

Having reviewed the supplemental briefing, we conclude that the trial court erred, as a matter of law, in ruling that subsections (b)(3) and (b)(4) are mutually exclusive. It is true that the two provisions have different prerequisites. As to sexual assault prosecutions, Rule 404(b)(3) is premised on a defendant's reliance on a particular defense — consent. In contrast, Rule 404(b)(4) is premised on the notion that there is a pre-existing relationship between the defendant and the complaining witness.[8]

But there is clear overlap between the rules. To define the scope of Rule 404(b)(4), the legislature incorporated the definition of "domestic violence" set out in AS 18.66.990(3). Under this definition, "domestic violence" means one or more of a list of crimes when committed by one "household member" against another.[9]

---

[7]   (...continued)
of "other sexual assaults or attempted sexual assaults."

[8]   *See Anderson v. State*, 436 P.3d 1071, 1078 (Alaska App. 2018) ("[T]he hallmark of a crime of domestic violence is that it is a crime that is committed within the context of a pre-existing relationship.").

[9]   *See* AS 18.66.990(3) & (5).

This list expressly includes any crime against a person under AS 11.41, including sexual assault.[10] Thus, in a sexual assault prosecution, where the defendant and the complaining witness are "household members" as defined in AS 18.66.990, and the defendant argues that the sexual contact was consensual, both Rule 404(b)(3) and 404(b)(4) *could* be implicated (depending on the nature of the defendant's prior conduct that the State seeks to introduce).

There are two characteristics of Rule 404(b)(4) that temper the trial court's concern that application of that provision to sexual assault cases would unduly minimize the State's need to rely on Rule 404(b)(3). First, to qualify for admission under Rule 404(b)(4), the defendant's *prior* act must also qualify as a "crime involving domestic violence." Second, a single sexual act does not establish a "sexual relationship" for purposes of the definition of "household member."[11] Thus, absent the existence of one of the other statutory qualifying relationships (like a familial relationship, as here), a sexual assault cannot be considered a crime of domestic violence for purposes of Rule 404(b)(4) by virtue of a single sexual act.

Because Kasgnoc's prior offense (sexual abuse of a minor) and the charged offenses (second-degree sexual assault and incest) both involved Kasgnoc's biological daughters, and because they are qualifying offenses under AS 18.66.990(3), they

---

[10]    *See* AS 18.66.990(3)(A). The crimes of sexual assault are codified at AS 11.41.410-.427.

[11]    *See Bates v. State*, 258 P.3d 851, 860-61 (Alaska App. 2011); *see also Miller v. State*, 312 P.3d 1112, 1116 (Alaska App. 2013) (noting that a single consensual sexual encounter does not amount to a "sexual relationship" under AS 18.66.990(5)); *Leu v. State*, 251 P.3d 363, 369 (Alaska App. 2011) (holding that the defendant's ongoing friendship with another man that included occasional sexual intimacy qualified as a "sexual relationship" under AS 18.66.990 because "[t]his is not the type of non-consensual or short-lived sexual involvement that falls outside the ordinary person's understanding of a 'sexual relationship'").

constitute "crimes involving domestic violence" for purposes of Rule 404(b)(4).[12] Therefore, evidence of Kasgnoc's prior conduct involving V.K. was admissible under Rule 404(b)(4) *if*, after application of the factors set out in *Bingaman v. State*, the trial court concluded that the probative value of the evidence outweighed the danger of undue prejudice, confusion of the issues, or considerations of undue delay under Evidence Rule 403.[13]

Even though the judge improperly applied Rule 404(b)(3), he nonetheless correctly conducted a *Bingaman* analysis.[14] In undertaking a *Bingaman* analysis, a judge must consider the particular circumstances of the charged case — for example, whether the other-acts evidence is relevant to any material issue in the case and how seriously disputed the material issue is.[15] The judge in this case did that: although he improperly characterized Kasgnoc's defense as a "consent" defense for purposes of Rule 404(b)(3), he clearly considered this defense a prerequisite to the admission of evidence of Kasgnoc's prior conduct under Rule 403.

The court's remaining *Bingaman* analysis involved a straightforward balancing of probative value versus undue prejudice. Thus, had the court properly recognized the applicability of Rule 404(b)(4), there is no reason to think that the *Bingaman* analysis would have been any different once Kasgnoc raised the defense that the court considered critical to its Rule 403 analysis. That is, given the way this case was

---

[12] *See* AS 18.66.990(3) & (5).

[13] *See Bingaman v. State*, 76 P.3d 398, 415-16 (Alaska App. 2003).

[14] *See Cordell v. State*, 2018 WL 6120201, at *3 (Alaska App. Nov. 21, 2018) (unpublished) (noting that the *Bingaman* factors apply to Evidence Rules 404(b)(2), (b)(3), and (b)(4)); *Rollins v. State*, 2015 WL 4874789, at *3 (Alaska App. Aug. 12, 2015) (unpublished) (noting the same).

[15] *Bingaman*, 76 P.3d at 415.

litigated, the analysis conducted by the trial court under *Bingaman* would have been the same in all material respects under Rule 404(b)(4).

Kasgnoc challenges the trial court's *Bingaman* analysis, arguing that evidence of Kasgnoc's prior conduct involving V.K. was too dissimilar from the charged conduct, and that the prior-act evidence was more prejudicial than probative.

In conducting the *Bingaman* analysis, the trial court found that the evidence of the prior act was strong; Kasgnoc was convicted after a confession and a plea. The trial court additionally found that the "situational behavior [was] remarkably the same," and demonstrated Kasgnoc's "willingness to have sex with a family member." Finally, the court found that the evidence was unlikely to lead the jury to decide the case on improper grounds.

We conclude that the trial court did not abuse its discretion when it found that the probative value of the prior-act evidence outweighed its potential for confusing the issues, misleading the jury, or engendering unfair prejudice.[16] We note that in both instances — the prior conduct involving V.K. and the charged conduct involving L.K. — Kasgnoc alleged that his daughter initiated the sexual contact.[17]

Because the crimes at issue in this case qualify as "crimes involving domestic violence" for purposes of Evidence Rule 404(b)(4), and because we are

---

[16] *See Howard v. State*, 239 P.3d 426, 429 (Alaska App. 2010) (reviewing a trial judge's weighing of probative value versus the potential for unfair prejudice under the "abuse of discretion" standard — *i.e.*, whether the ruling is clearly untenable or unreasonable).

[17] Kasgnoc's claim that both V.K. and L.K. initiated sexual contact with him may have given his prior conduct with V.K. independent, case-specific relevance under Alaska Evidence Rule 404(b)(1). But Rule 404(b)(1) does not provide an independent basis for our decision in this case because the prosecutor relied heavily on the evidence of Kasgnoc's prior conduct with V.K. for propensity purposes. *See Berezyuk v. State*, 407 P.3d 512, 516 (Alaska App. 2017) (noting that Evidence Rule 404(b)(1) "expressly prohibits character evidence" (italics omitted)).

convinced that the evidence was admissible under that rule, we affirm the court's decision on this alternate ground.

That said, our decision should not be read to condone the scope of the evidence and argument that the prosecutor presented as to Kasgnoc's prior conduct. In our view, the prosecutor devoted an inordinate amount of time to the prior-act evidence, often focusing more on the prior conduct than on the charged conduct, and describing the prior conduct in unnecessarily inflammatory detail.

For the most part, Kasgnoc's attorney did not object to the scope of the evidence or the nature of the prosecutor's argument. And on appeal, Kasgnoc does not raise this issue as a matter of plain error. But we wish to remind prosecutors, defense attorneys, and trial judges that the question of the *admissibility* of prior-act evidence is a question separate and distinct from the *nature and scope* of that evidence, and the type and tenor of a prosecutor's arguments.[18]

*A note on the judgment*

In our review of this case, we discovered that the written judgment in the appellate record appears to inaccurately reflect the sentence Kasgnoc received. At sentencing, the court imposed a composite sentence of 35 years to serve (with additional suspended time), but the judgment shows that Kasgnoc received a composite sentence

---

[18]  *Cf. Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1136, 1138-39 (Alaska 2014) (recognizing that a court's pretrial decision to admit prior-act evidence does not necessarily mean that the use of the evidence at trial is unfettered, but where the defendant failed to object to the improper use of the evidence at trial, the defendant could not rely on the improper use of the evidence to argue that the trial court abused its discretion in its pretrial ruling); *see also State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (recognizing that the court's task of weighing probative value against prejudicial effect does not end with the preliminary decision to admit some prior-act evidence, but that the defendant bears the burden of challenging the scope of such evidence).

of 45 years to serve. Neither party has flagged this issue in their briefs. If Kasgnoc believes that there is an error in the judgment and this error has not yet been addressed, Kasgnoc may file a motion to correct the judgment in the superior court.[19]

*Conclusion*

We AFFIRM the judgment of the superior court.

---

[19] *See Graybill v. State*, 822 P.2d 1386, 1388 (Alaska App. 1991) ("Where . . . a conflict exists between an orally imposed sentence and a subsequently issued written judgment, it is well settled that the oral pronouncement of sentence must govern.").